## GOODLOE et ux. v. WALLACE.

Court of Appeals of Kentucky.

June 25, 1954.

Carl F. Eversole, Richmond, for appellants.

Wallace, Turner & Reed, Lexington, for appellee.

MOREMEN, Justice.

Appellants, George W. Goodloe and wife, sued appellee, William L. Wallace, to reform a deed by correcting the boundary of a parcel of land in Richmond. An amended petition charged an unjustified and wrongful claim of an easement in and trespass upon a five-foot sidewalk and of an easement of "supposedly ancient lights and air from the lateral property and lot of the plaintiffs" adjoining the property conveyed. Appellants prayed for the reformation of the deed, an injunction, and damages and for what is in substance and effect a declaration of the legal rights of the parties in respect to the several contentions.

The property is an apartment building called "Woodland Inn" located on the southwest corner of Second and Water Streets. It was bought by appellee through his father as his agent at an auction sale in September, 1942. Appellants were then and are now the owners of a one-story building adjoining it on the south, which was at the time occupied by a dry cleaning establishment known as "Dixie Cleanery."

Appellants' deed to the apartment house lot calls for 113.1 feet frontage on Second Street from the corner of Water Street. The deed they made describes the line as "a distance of about 115 feet more or less." It also conveys "all easements and grants pertaining to said property including the right to repair the water line to a well owned by first party's adjoining property."

We summarize the testimony of Mr. Goodloe. The father of the defendant, Wallace, had called him to come to his office; when he arrived he was informed by a stenographer that Mr. Wallace had gone to the office of Ross and Ross, attorneys, and wanted him to go there and he did so; he submitted to Mr. Ross his title papers, including the deed from his grantors, which called for 113.1 feet frontage; told Mr. Ross, who was preparing the deed, that the line "stopped at the Dixie Cleanery wall and that the easement was granted to the attachment of his floor and his joists and his roof into the wall, and that that was a permanent grant that went with the property." He further testified that he had supposed Ross was preparing a contract of sale and he had signed the instrument without reading it. Ten months later he discovered that the deed called for 115 feet frontage. The plaintiff further testified that at the time of the sale he had specifically pointed out that the line of the building extended only to the one-story building, the east wall of which protrudes a few inches beyond the east wall of the apartment building and makes a perceptible union. He further announced at the sale that the purchaser would have "the right to its present connections into this wall—that is, the floor and ceiling joists into the wall." Mr. Goodloe is sustained in part by testimony of the auctioneer.

We summarize the evidence of the defendant, William L. Wallace. His father, who represented him in these transactions, is dead. The defendant was not present at the sale and did not see the deed until it

was sent to him after being recorded. The stenographer in the office of his father testified she never saw or communicated with Mr. Goodloe in connection with this transaction. Mr. Ross testified that Mr. Wallace, Senior was not present when the deed was drafted and he had had no communication with him. The deed was prepared at the instance of Mr. Goodloe, who paid him a fee for drawing it. Goodloe showed him a deed in which he had conveyed an undivided interest in the apartment property to his wife and that calls for a frontage of only 100 feet more or less. Goodloe had given him the figure of 115 feet to be put in the deed. It was read over to him. That afternoon Goodloe and his wife came back to the office and acknowledged the deed before Ross as a notary public.

Goodloe erected the one-story building several years before he built the apartment house. When he erected the apartment house, the nine-inch brick north wall of the one-story building was used as the south wall of the apartment as high as it went and then was extended upward about 15 feet above the roof of the one-story building as the exclusive wall of the second story of the apartment.

We omit reference to testimony of the parties concerning the wall between the two buildings and their dimensions because it is not definite. Photographs show the situation and connections of the two buildings very clearly. A civil engineer and building contractor took exact measurements and made a close examination of the structures. They testified that the front line of the apartment building up to the protruding wall of the one-story building is 113 feet 8½ inches. This excludes the south wall. The west line at the rear of the building to that wall is 115 feet 3 inches. Adding the thickness of the wall, 9 inches, makes these lines 114 feet 5½ inches in front and 116 feet 1 inch in the rear. It is readily apparent, therefore, that the figure in the deed, "115 feet more or less", is substantially accurate. To reform the deed to show that it conveyed only 113 feet would be to adjudge that the plaintiff sold the house with only

three walls for the upper floor and an easement in the wall for the lower floor.

The phrase "more or less" in a deed relieves the quantity or line in connection with which it is used of exactness and indicates the parties risk a slight deviation. Eastland v. Robinson, 233 Ky. 403, 25 S.W.2d 1028, 70 A.L.R. 365.

The trial court found no grounds to reform the deed. He rendered what we regard as a fair and equitable judgment. It adjudges the foundation and wall described up to the top of the one-story building to be a common or party wall of the two buildings, but the wall above that was included in the conveyance, and is a part of the apartment house and belongs exclusively to the defendant grantee without any right of the plaintiffs to build against or attach any building or construction to that upper portion of the wall.

As stated, an issue was raised as to the right of the defendant to use a sidewalk running along the west rear side of the apartment to Water Street on the north. The lot on which this sidewalk was built had been purchased by Goodloe and R. C. Boggs jointly. The title was at first taken in Goodloe's name alone, but he conveyed to Boggs the front part of the lot abutting Water Street and kept the back end, which joined the one-story building lot referred to above. The deed reserved the right of Goodloe to build a walkway along the east boundary line "for the perpetual use of both parties for their adjacent properties." One of those properties was the apartment building. Goodloe's own testimony is that he had built an entrance into the basement of that building from this sidewalk and had used it all during the years he owned the building. It appears to be the only means of access to the furnace room except coal chutes and a trap door in the floor above. Not only in his testimony but upon other occasions the plaintiff had recognized this condition and this right to have passed to the defendant. The deed from Goodloe to Wallace, after describing the dimensions of the property, adds "together with all ease-

ments and grants pertaining to said property." This was certainly one of those easements. The evidence on this point is so clear that it is not necessary to resort to the rule of a grant or reservation by implication which may arise or attach on the conveyance of one of several parcels of land belonging to the same owner where the easements or incidents were granted or used by the owner during the unity of possession. See Gentry v. Piercy, 175 Ky. 174, 193 S.W. 1017.

Since, at least in respect to the so-called "light and air rights" of the defendant through the windows in the south wall of the apartment building, the case was one for a declaratory judgment, it was the trial court's prerogative not to pass upon that question at this time, and we follow the same course.

The judgment is affirmed.