**Ralph A. BICKLER, Appellant,**

**v.**

**Max BICKLER et ux., Appellees.**

**No. 11298.**

Court of Civil Appeals of Texas.

Austin.

May 19, 1965.

Rehearing Denied June 9, 1965.

Sneed & Vine, Jerome Sneed, Jr., J. P. Darrouzet, Austin, for appellant.

Kuykendall & Kuykendall, F. L. Kuykendall, Austin, for appellees.

PHILLIPS, Justice.

This case involves a suit brought by Ralph Bickler against Max Bickler to establish an easement in a driveway on the property adjoining his and owned by Max Bickler and also to establish ownership of a 1-ft. 8-in. strip of land lying between his property and the adjoining property of his brother Max.

After trial to the court and after filing extensive findings of fact and conclusions of law, the court held that Ralph did not have an easement over the driveway and did not own the 1.8-foot strip in controversy. The court also ordered Ralph to remove a portion of a concrete walkway that extended onto Max's property.

We affirm the judgment of the trial court.

In 1908 appellee, Max Bickler, and his brother Harry acquired a tract of land in Austin located on West 16th Street.

In 1909 Max and Harry partitioned a portion of this property between themselves and in 1915 they executed a correction deed. In this latter deed, Harry's property was extended two feet to the east, and Max's east line was extended six feet to the east to take in the already existing driveway which is in controversy here and which was then lying on property that had not been partitioned and was still owned in common by Max and Harry.

16th Street runs east and west. The Bickler property lays to the south of 16th Street. After the abovementioned partition and correction thereof, Harry owned a lot abutting 16th Street on the north, immediately adjoining him and to the east lay Max's property and immediately adjoining Max's property to the east lay an undivided strip owned in common by Harry and Max.

In 1915 Harry and Max conveyed the north portion of this undivided strip (a metes and bounds description not being necessary here) to Sam Sparks. The north end of this portion conveyed to Sparks abutted 16th Street.

At a date not important to this opinion Mrs. Jacob Bickler, the mother of the litigants herein, purchased a 15-foot strip from Sam Sparks. This strip extended across the entire south portion of the

Sparks' strip previously purchased from Max and Harry.

In 1916 and after the abovementioned conveyance to Sparks, Max and Harry and all of the other children of Martha and Jacob Bickler (including plaintiff-appellant Ralph) entered into an agreement with reference to a house for their mother (Jacob Bickler their father being dead at this time) to be placed on that portion of the property still owned in common by Harry and Max. This property lay immediately to the south of the property Harry and Max had conveyed to Sparks and south of, and adjoining, the strip purchased from Sparks by Mother Bickler. This property was cut off from any access to 16th Street other than by the driveway in controversy that joined it through Max's property immediately to the west.

This agreement to build a house for Mother Bickler that the children entered into recited the amount that the house was to cost, the contribution due from each child and also that at Mother Bickler's death either plaintiff-appellant Ralph or his brother George (who both lived with Mother Bickler up until the time of her death) would have a right to purchase the house for a stipulated price within one year after her death. There were other provisions of this instrument not pertinent here. The house was built in 1915 and Ralph and George continued to live there with their Mother until her death on November 18, 1937 intestate.

On December 6, 1938 Max and his wife, Mary, executed the following instrument:

"Austin, Texas, December 6th, 1938

WE, Max H. Bickler and wife, Mary H. Bickler, hereby acknowledge the receipt of the sum of $500.00 this day paid to us by our brother, Ralph A. Bickler, such amount being our interest (as a loan on) in the property at 809 West 16th Street, and as more fully described in the AGREEMENT entered into by the Bickler children,

their husbands and wives, respectively, on the 10th day of June, 1916.

And we do hereby agree that Ralph A. Bickler may pay the interest amounting $287.50, to date, and no more, on said loan of $\frac{250.00}{$500.00}$ in such monthly payments, until fully paid up, as may be convenient to him.

EXECUTED IN DUPLICATE

/s/ Max H. Bickler
/s/ Mary H. Bickler"

There are handwritten notations following the abovementioned signatures on the body of the instrument showing payments from January 1939 through March 1946. There is no dispute over payments.

Ralph had not exercised the option to purchase his mother's property within the year after her death and the trial court so found.

Ralph received title to the property on which his mother's house was built in 1949 through deeds executed by Max and Harry.

As stated above, Mother Bickler had purchased a portion of the south part of the Sparks' property which lay between the property on which her house was located and 16th Street.

Through subsequent conveyances a Mrs. Marrs obtained title to the Sparks' property and in 1944 Mrs. Marrs conveyed an 8-foot strip along her east line and a 20-foot strip across her south line to plaintiff-appellant Ralph.

At present Ralph's property consists of the land upon which Mother Bickler's house was built. Immediately to the north of this is the strip Mother Bickler bought from Sparks (of which Ralph now owns all except the outstanding interests of two Bickler children). Immediately to the north of this is the property Ralph acquired from Mrs. Marrs in 1944 which includes the abovementioned 8-foot strip

leading from Ralph's property onto 16th Street.

From 1915 until 1962 Ralph Bickler used a driveway, admittedly on Max's property, to arrive at his residence. He has also used a walkway that extends from 16th Street along the dividing line between Max's and Ralph's property. This walkway has been approximately three feet wide, covered by flagstones for many years and recently concreted by Ralph. This walkway extends onto Max's property for a distance of 1-ft. 8-in.

When Max put a chain link fence along his property line which cut off 1-ft. 8-in. of the abovementioned walkway and cut off access to the driveway entirely, Ralph filed this lawsuit.

In his first point of error, appellant Ralph complains of some twenty-one findings of fact made by the trial court. We do not deem it necessary to the decision of this case to discuss all twenty-one findings and will discuss only those which we consider controlling. Rule 296, Texas Rules of Civil Procedure; Boston Insurance Co. v. Rainwater, Tex.Civ.App., 197 S.W.2d 118.

In his second point of error, appellant complains of the error of the court in its conclusions of law and of its judgment in the following: (a) in concluding that plaintiff never had and is not now entitled to any kind of easement; the error of the take nothing judgment and that appellant be required to remove the concrete walkway.

Appellant's third point of error is that of the trial court in permitting appellees to file a trial amendment wherein they asked that if the court found that the concrete walkway encroached on the land of appellee that appellant be required to remove same in a workmanlike manner.

We overrule these points.

With respect to the driveway that is located on appellee Max's property that ap-pellant Ralph has been using up until Max fenced it off in 1962, appellant claims an easement by estoppel en pais and an easement appurtenant by implication.

Appellant is precluded from asserting an easement by estoppel en pais for several reasons.

▆ In the first place, there are no pleadings on the part of appellant that will support any theory of estoppel. The rule is well established that in order for estoppel to be relied upon it must be especially pleaded. 22 Tex.Jur.2d 689, Sec. 19. Also Rule 94, T.R.C.P. requires that estoppel shall be affirmatively pleaded. The pleader must allege with particularity the facts that are essential to establish estoppel, 22 Tex.Jur.2d 691, Sec. 20. No intendments will be indulged in favor of the plea.

▆ In the second place, there is no evidence of the elements necessary to establish an estoppel in pais. These elements according to Harrison v. Boring, Sup.Ct., 44 Tex. 255, are (a) an agreement or representation which has been so acted upon by the one claiming the estoppel and (b) an expenditure of monies which would be lost if the right to enjoy the easement could be revoked. Also see Anderson v. Tall Timbers Corporation, 378 S.W.2d 16, Sup.Ct.

▆ Ralph does not claim an express easement over the driveway. Nor is there evidence of any representation on the part of Max that would have led Ralph to believe that he had an easement thereon. In this regard, the overwhelming weight of the evidence in this case is to the effect that whatever use Ralph had made of both the driveway and the walkway over the years had been a permissive use enjoyed by both Max's and Ralph's families. From a reading of the record in this case it would be difficult to arrive at any other conclusion. The trial court so found.

On page 33 of his brief appellant states: "* * * and even though we do not have an affirmative expenditure by Ralph on the

roadway, * * *" Appellant then argues that once Ralph had a garage on Max's property near the driveway that he subsequently removed at Max's request and had planted shrubs on his own property "as if the driveway was a part thereof." Such were not sufficient to represent an expenditure of monies which would be lost if the right to enjoy the easement could be revoked.

Nor do we believe, and so hold, that appellant had an easement appurtenant by implication.

Appellant contends that at the time the Bickler children entered into the agreement to build a house for their mother in 1916, the driveway in question was the only way to reach the property on which the house was subsequently built. That after Mother Bickler's death and Max and his wife executed the above quoted agreement of December 6, 1938 referring to the agreement of 1916, there was still no entrance to the property subsequently purchased by Ralph other than by the driveway in question or the walkway in question. Appellant contends that by virtue of these agreements that the easement appurtenant by implication attached and that Ralph's property cannot be divested of same even though Ralph did not acquire title to the property until 1949. That such an easement attached even though obtaining title to the Marrs' property in 1944, he acquired access to 16th Street through his own property. That the deeds from Max and Harry conveying the property to Ralph by metes and bounds also conveyed "the appurtenances thereto" and that the easement was one of the appurtenances. That Harry and Max had created a dominant estate in the part they had allowed their mother to build on and had subsequently sold to Ralph and that Max's adjoining property had become a servient estate with the easement in question impressed thereon.

We shall not discuss the cases cited by appellant as they all require one element that is not present in appellant's situation and that is strict necessity.

It is true that such a necessity existed in respect to the property used by Mother Bickler and subsequently by Ralph up until the time that Ralph acquired his own way of ingress and egress in 1944; however, we hold that when Ralph acquired title to the property in 1949 such necessity for the easement as the law requires was no longer present.

The above quoted agreement of December 6, 1938 executed by Max and his wife stating that they had received $500.00 from Ralph and referring back to the agreement of the Bickler children in 1916 wherein it was agreed that either Ralph or George would buy the house within a year, was no more than a contract of sale permitting Ralph to buy the house. No title passed to Ralph here. In fact, until he paid the entire consideration required by the contract he had no more than an equitable right, Johnson et ux v. Wood, 138 Tex. 106, 157 S.W.2d 146. In Othen v. Rosier et al, 148 Tex. 485, 226 S.W.2d 622, the Supreme Court stated:

"* * * In 28 C.J.S., Easements, §§ 34 and 35, pages 694 et seq., it is made clear that before an easement can be held to be created by implied reservation it must be shown: (1) that there was a unity of ownership of the alleged dominant and servient estates; (2) that the roadway is a necessity, not a mere convenience; and (3) *that the necessity existed at the time of severance of the two estates.*" (Emphasis added.)

The Supreme Court has restated these requirements in W. T. Waggoner Estate v. Gleghorn, 378 S.W.2d 47, Sup.Ct.

■ Since Ralph's estate was severed from Max's and Harry's in 1949 there was no necessity at that time for the easement claimed due to Ralph's having acquired the Marrs' property. Such a necessity is a prerequisite for the easement he claims. See Mitchell et al v. Castellaw, 151 Tex. 56, 246

S.W.2d 163; Duff v. Matthews et al, 158 Tex. 333, 311 S.W.2d 637; Drye et al v. Eagle Rock Ranch, Inc. et al, 364 S.W.2d 196, Sup.Ct.

Consequently the "appurtenances" mentioned in the deeds to Ralph in 1949 did not convey any easement. In 19 Tex.Jur.2d, page 469, Section 153, it is stated:

"Nothing passes by the term 'appurtenances' except such land as is indispensable to the use and enjoyment of the property conveyed."

In Stradley v. Magnolia Petroleum Company, Tex.Civ.App., 155 S.W.2d 649, writ ref., the Court quoted with approval from 26 C.J.S. Deeds page 902, Section 106, as follows:

" 'It is a general rule that upon the conveyance of property the law implies a grant of all the incidents rightfully belonging to it *at the time of conveyance* and *which are essential* to the full and perfect enjoyment of the property." (Emphasis added.)

■ At the time the easement over Max's property was necessary to reach Mother Bickler's house and subsequently Ralph's house, neither owned the property. The estate had not been severed. When the estate was severed and Ralph became the owner, there was no longer a necessity for the easement as Ralph had acquired a way of his own.

Again we quote from Othen v. Rosier, supra:

" * * * 'The rule is well settled that use by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription, since user as of right, as distinguished from permissive user, is lacking,' * * *."

Ralph's use throughout the years was permissive only.

■ We come now to the walkway between Max's and Ralph's properties that has been in existence for many years and used by Ralph and his family. For many years the walk was covered with flagstones and later covered with concrete. Both Max and Ralph had a survey made and both surveys show that the walk is on Max's property for a distance of 1-ft. 8-in. There is no dispute over this. Ralph knew this when he had the flagstones covered with concrete and he so testified.

Appellant maintains that the walkway is on Max's property only if the call in his deed is strictly applied and that the words "more or less" stated after the call imply a latitude that would place the walkway entirely on appellant's property. To support this theory appellant refers to the correction deed executed by Harry and Max in 1916 and reasons that an ambiguity exists as to where the correct boundary line really is at present. They also refer to the agreement of 1916 which states that the width of the strip in question was 4 feet instead of the 3 feet mentioned in Ralph's deed. From here they reason that inasmuch as the walk has remained in its present location for all these many years, that the boundary has been acquiesced in by the adjoining parties.

We do not agree. The cases cited by appellant wherein the words "more or less" relieved the figure from exactness applied to quantity of land and not to distances or calls. See Wooten v. State, 142 Tex. 238, 177 S.W.2d 56.

In Humble Oil and Refining Co. v. Luther, Tex.Civ.App., 40 S.W.2d 865, no writ history, the court held that there was no ambiguity in a call reciting "thence *about* 50 varas * * *;" that 50 varas meant 50 varas and the word "about" was disregarded.

In Gulf Oil Corporation v. Marathon Oil Company, 137 Tex. 59, 152 S.W.2d 711, the Supreme Court holds that before the parties may establish a boundary line different from the true boundary line by parol, there must be either doubt, dispute or uncertainty between the parties as to the true line.

The undisputed testimony here shows that there had never been any dispute or controversy between Max and Ralph as to the true location of the boundary line.

 Ralph contends that there is a defect in his right of egress and ingress over the corridor he obtained from Mrs. Marrs in 1944 in that such traffic must of necessity pass over the property he purchased from the Bickler heirs, the same being the property purchased by Mother Bickler from Sam Sparks, and that there are two interests still outstanding in respect thereto.

We overrule this contention. He has a right to the use of the property as a co-tenant and as such has been using the property without interference from anyone. See 15 T.J.2d, page 164, Sec. 9.

 After the surveyor had testified as to the location of the boundary line in relation to the walkway in question and after Ralph had testified that he knew that the concrete walk extended into Max's property, appellee filed the trial amendment complained of asking that if it was found that the concrete walkway encroached onto Max's property that Ralph be required to remove the same in a workmanlike manner.

In allowing this amendment the court was not in error. Rules 66 and 67 provide for trial amendments. Rule 66 states that the court may allow amended pleadings:

"* * * and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits. The court may grant a postponement to enable the objecting party to meet such evidence."

The allowance of the trial amendment did not prejudice Ralph's action or defense on the merits. He did not ask for a postponement to enable him to meet such evidence.

See Dirks v. Dirks, Tex.Civ.App., 302 S.W. 2d 471, writ ref., n. r. e. The Court did not abuse its discretion in allowing this amendment and merely prevented the necessity of another trial in granting the amendment and ordering that the portion of the walkway on Max's property be removed.

The judgment of the trial court is affirmed.

Affirmed.