**Ralph A. BICKLER, Petitioner,**

v.

**Max BICKLER et ux., Respondents.**

**No. A–10911.**

Supreme Court of Texas.

May 18, 1966.

Rehearing Denied June 22, 1966.

Sneed & Vine, J. P. Darrouzet, Austin, for petitioner.

Kuykendall & Kuykendall, Austin, for respondents.

CALVERT, Chief Justice.

The primary purposes of this litigation between Ralph and Max Bickler, brothers,

are to establish the common boundary line of their adjoining residential lots and to adjudicate a claim by Ralph to a driveway easement on and over Max's property.

Suit was filed by Ralph. He sought a mandatory injunction requiring Max to remove a fence erected across the driveway which prevented Ralph's use thereof for ingress and egress to and from his residence to a public street. He also sought to establish that the common property line between their respective properties was the western edge of a concrete walkway. In addition, he asked damages for interference by Max with his use of the driveway easement and for injury done by Max to the walkway. Max was permitted to file a trial amendment during the course of the trial and thereby to seek a mandatory injunction requiring Ralph to remove the portion of the concrete walkway which encroached on Max's property.

Trial was to the court without a jury. The trial court rendered judgment directing that Ralph take nothing by his suit, and that he remove that portion of the concrete walk which extended onto Max's property. The Court of Civil Appeals affirmed. 391 S.W.2d 106. The case is severed into two causes. We affirm the judgments of the courts below in one, and in the other we reverse the judgment and remand the cause to the trial court with instructions. The questions will be dealt with separately.

### The Driveway Easement

Ralph has two bases for contending that the evidence establishes his right to an easement for a driveway on and over Max's lot. The first is that his right thereto arises out of an estoppel in pais— an easement by estoppel. The second is that when Max conveyed to him the lot he now owns, the deed granted the easement by implication—an implied easement appurtenant. We agree that Ralph's right to the easement must be upheld on the latter ground; and there is, therefore, no need to consider his claim to an easement by estoppel. The facts which give rise to the implied easement appurtenant, follow.

In 1909 Max and Harry, another Bickler brother, owned a tract of land fronting North on West Sixteenth Street in the City of Austin. In that year Max and Harry executed a written partition agreement under the terms of which, as corrected by a subsequent writing in 1915, a lot out of the tract fronting 152 feet on Sixteenth Street and 276 feet in depth was set aside to Harry, and an adjoining lot on the East, fronting 104 feet on Sixteenth Street and 276 feet in depth, was set aside to Max. The remainder of the original tract lying East of Max's lot was continued in joint ownership.

In 1915 Max and Harry conveyed the most easterly part of the jointly owned remainder to Sam Sparks. The Sparks lot fronted 124 feet on Sixteenth Street and was 175 feet in depth. This conveyance left Max and Harry as joint owners of a strip between Max's lot and the Sparks lot 4 feet in width and a lot approximately 101 feet deep and from 124 to 135 feet in width lying South of the Sparks property and, except for the 4-foot strip, cut off from access to Sixteenth Street by that property. In 1915 the several children of Mrs. Martha Bickler, a widow, including Max, Harry and Ralph, entered into an oral agreement for the erection of a house on this remaining lot for use by Mrs. Bickler. The agreement was incorporated in a formal writing in 1916, after the completion of the house. Mrs. Bickler lived in the house until her death in 1937. Ralph was living in the house with the mother when the written agreement was executed in 1916 and has continued to live therein at all times since, having purchased the house and lot from Max and Harry in 1949.

The undisputed evidence establishes conclusively that a well-defined driveway from Sixteenth Street South across Max's lot to the lot purchased by Ralph was in

existence and use when the grant to Ralph was made, and that the same had been open and used continuously by the owners of the lot and those occupying the house and their guests and business invitees since at least as early as 1915. The use of the area as a driveway was continued by Ralph until Max erected a fence across it in 1963.

From this recitation of the undisputed facts, it is apparent that all of the use requirements of the driveway for the establishment of an implied easement appurtenant except that of necessity, existed when the grant to Ralph was made. See Drye v. Eagle Rock Ranch, Inc., Tex. Sup., 364 S.W.2d 196, 205–209 (1963); Howell v. Estes, 71 Tex. 690, 12 S.W. 62 (1888). In *Drye* we listed the use requirements as follows: "1. The use must be *apparent*, in existence at the time of the grant. * * * 2. Its use must have been *continuous*—so that the parties must have intended that its use pass by the grant. * * * 3. Its use must be *necessary* to the use of the dominant estate. * * *[1] 364 S.W.2d 207–208. We also recognized in *Drye* that a use is "continuous" "if no further act of man is necessary to its continuous exercise * * *." 364 S.W.2d 208. The evidence in the record before us establishes that the use of the driveway was at all relevant times both apparent and continuous. The only question remaining is whether use of the driveway is necessary to use of the dominant estate.

It is admitted that use of the driveway was necessary to use of the lot until it was sold to Ralph in 1949. The Court of Civil Appeals held, however, that use of the driveway by Ralph was not necessary at the time of the conveyance to him in 1949, and is not now necessary because in 1944 Ralph acquired another easement which the Court concluded he had a right to use as a driveway between Sixteenth Street and his lot.

We disagree with the conclusion, and hold that Ralph has no legal right to use the additional easement for ingress and egress to and from such lot.

The facts surrounding Ralph's acquisition of the additional easement follow. In 1921 Sam Sparks conveyed a part of his lot to N. A. Stedman. The part conveyed fronted 60 feet on Sixteenth Street, was 160 feet in depth, and adjoined the 4-foot strip easterly of Max's lot. In the same instrument Sparks dedicated an 8-foot strip over his remaining land, adjoining and for the full depth of the lot conveyed, in the following language:

"* * * for a passage way between the property conveyed to said Stedman and our property eastward thereof, such passage way to be used by ourselves, heirs and assigns and by said Stedman, his heirs and assigns in common; and the easement of said Stedman, his heirs and assigns in said passage way shall be perpetual, but the dedication of said passage way shall not have the effect of granting any rights to the general public therein."

The deed was corrected in 1930, but the dedication of the passageway easement was not changed. The Stedman lot and easement were conveyed to S. M. N. Marrs in 1930.

In 1922 Sparks conveyed a strip 15 feet in depth and 60 feet in width, lying just South of the Stedman lot, to Mrs. Jacob (Martha) Bickler. Ralph inherited an interest in this lot at the death of his mother in 1937, and thereafter purchased the interests of some of the other children.

In 1944 Ralph purchased a 20-foot strip off of the South end of the Marrs lot, together "with all the rights in respect to" the 8-foot passageway easement as had been conveyed by Sparks to Stedman. It is this easement which the Court of Civil Appeals has held Ralph has a right to use for

---

1. Emphasis added in the Drye opinion.

ingress and egress to and from the lot purchased by him from Max and Harry. The conveyances described and the areas in controversy are shown on the attached sketch.

16TH STREET

| | | |
|---|---|---|
| ABCD | Max's lot | |
| EBCHGF | Max and Harry to Ralph—Ralph's lot | |
| EIGF | Max and Harry to Sparks | |
| EJLK | Sparks to Stedman | |
| JMNL | Sparks to Stedman easement | |
| FKNO | Sparks to Mrs. Bickler | |
| KLQP | Marrs to Ralph | |
| BRST | Driveway easement | |
| FEBU | Walkway | |

Our holding that Ralph has no legal right so to use the Sparks passageway easement rests on the rule of law stated in 2 Thompson on Real Property, 1961 Replacement Ed., 565–566, § 386, in this language:

"Rights of way granted or reserved are appurtenant to the dominant tenement, and can be used only for the purposes of that tenement. * * * One having a right of way appurtenant to specified land cannot lawfully use the way to reach another tract owned by him to which the way is not appurtenant. * * * The way is granted for the benefit of the particular land, and its use is limited to such land. Its use cannot be extended to other land, nor can the way be converted into a public way without the consent of the owner of the servient estate."

For another statement of the rule, see note, Ann.Cas.1917A, 1250–1251, where we find this language:

"Where, in connection with a transfer of property, an easement is granted for the benefit of that property over lands of the grantor, the easement is presumed to be appurtenant to the granted premises, and in the absence of words creating a more extended right the grantee or his successor in interest is not entitled to use the easement for the benefit of other premises owned by himself or another."

As further authority for the rule, see 3 Tiffany, Real Property 323–324, § 803; 25 Am.Jur.2d 482–484, § 77; Davenport v. Lameson, 21 Pick. (Mass.) 72 (1838); Stearns v. Mullen, 4 Gray (Mass.) 151 (1855); Ball v. Allen, 216 Mass. 469, 103 N.E. 928 (1914); Schmoele v. Betz, 212 Pa. 32, 61 A. 525, 108 Am.St.Rep. 845 (1905); Barbaresos v. Casaszar, 325 Mich. 1, 37 N.W.2d 689 (1949).

■ Inasmuch as the Sparks easement cannot legally be burdened with a use for the benefit of the lot purchased by Ralph from Max and Harry, use of the driveway easement over Max's lot is still necessary to the use of the dominant estate, and the trial court erred in failing to require Max to remove his fence insofar as the same prevents Ralph's use thereof. As stated in *Drye,* an easement appurtenant " * * * generally takes the form of a negative easement: the owner of the servient estate simply may not interfere with the right of the owner of the dominant estate to use the servient estate for the purpose of the easement." 364 S.W.2d 207.

Duff v. Matthews, 158 Tex. 333, 311 S.W. 2d 637 (1958), and Othen v. Rosier, 148 Tex. 485, 226 S.W.2d 622 (1950), cited by Max, are not in conflict with our holding here. Our denial of a way of necessity in Duff v. Matthews was directly related to proof that there was another way to plaintiff's lot which he had a legal right to use. Denial of a way of necessity in Othen v. Rosier rested on failure of the plaintiff to discharge his burden of proving that he had no other way of access.

*The Boundary Line*

The boundary question arises out of the descriptive words, "more or less," used in a call for distance in the deed from Harry and Max to Ralph.

We have noted that when Harry and Max conveyed the easterly lot fronting 124 feet on Sixteenth Street and with a depth of 175 feet to Sparks, title to a narrow strip, 4 feet in width, between that lot and the lot partitioned to Max was left in Harry and Max. This strip was improved and used as a walkway from Sixteenth Street to the residence built for Mrs. Martha Bickler in 1915 on the lot purchased by Ralph in 1949.

The beginning point of the metes and bounds description of the property conveyed by Harry and Max to Ralph is the northwest corner of the lot conveyed to Sparks. The first call is as follows: "thence westerly with the north line of our tract *a distance of three feet, more or less."* [2] The second

---

2. Emphasis ours throughout unless otherwise indicated.

call was along a southerly course for a distance of 276 feet. The last call is northerly from the southwest corner of the Sparks lot and along its western boundary to the place of beginning. It thus appears that although the strip owned by Harry and Max, lying between the Sparks lot and Max's lot was 4 feet in width, their deed to Ralph conveyed a strip "three feet, more or less" in width.

In 1960 Ralph constructed a concrete walkway over the strip. The walkway was 4.8 feet in width at its northern end abutting on Sixteenth Street and 4.08 feet in width at its southern end. The evidence reflects that the concrete walkway is the same width as was the walkway which had been in actual use for many years. In view of this fact, Ralph argues that the descriptive call in his deed, "a distance of three feet, more or less," should be held to establish the western boundary of the strip and the eastern boundary of Max's lot at the western edge of the concrete walkway. He also argued in the courts below that the boundary for which he contends had been fixed by acquiescence. The trial court and Court of Civil Appeals rejected both arguments, held that the words "more or less" should be disregarded, and fixed the boundary at a distance of 3 feet from the western boundary of the lot conveyed by Harry and Max to Sparks. Ralph does not complain in this Court of the holding of the Court of Civil Appeals that the boundary was not fixed by acquiescence. He contends only that the court erred in holding that the words "more or less" have no legal significance in a call for distance and should be disregarded. We agree with Ralph that the words "more or less" may have legal significance in a call for distance, but we do not agree that the trial court was required to extend the distance of the first call to the western edge of the concrete walkway.

The words, "more or less," are frequently used in conveyances to qualify statements of quantity and descriptive calls for distance. In both situations they perform essentially the same function; they relieve exactness. In Wooten v. State, 142 Tex. 238, 177 S.W.2d 56, 58 (1944), we recognized that the words "more or less" when added to an estimate of the quantity of land conveyed do have legal significance, and that they "are taken as prima facie evidence that the parties intended to risk a not unreasonable gain or loss in the estimated quantity." See also Rich v. Ferguson, 45 Tex. 396 (1876). The Court of Civil Appeals recognized the rule of *Wooten* but held that it has no application to situations in which the words are used to qualify calls for distance. It cited Humble Oil & Refining Co. v. Luther, Tex.Civ.App., 40 S.W.2d 865 (1931), no writ history, in support of its holding. In that case the court held that the word "about" in a distance call—"thence about 50 varas * * *"— should be disregarded. We have no quarrel with the actual holding in that case, but we do not understand the rule to be that qualifying words such as "about," "approximately," and "more or less" in distance calls should always be disregarded.

In Ingelson v. Olson, 199 Minn. 422, 272 N.W. 270, 273, 110 A.L.R. 167 (1937), the Court said that words such as "about," "approximately," and "more or less" denote "estimate, not exact precision," and continued:

"Estimate is used *in order that the intention of the parties shall not be defeated* by attempted precision, which at the time is not possible. They are words of safety and precaution, intended to cover some slight or unimportant inaccuracy, for an adjustment, if necessary, of *distance or quantity.*"

In that case the Court was dealing with field notes in which distance calls were qualified by the words "approximately" and "more or less." See also Russo v. Corideo, 102 Conn. 663, 129 A. 849 (1925); Salyer v. Poulos, 276 Ky. 143, 122 S.W.2d 996 (1939); 11 C.J.S. Boundaries § 4, p. 541; 6 Thompson on Real Property, 1962 Replacement Ed. 643, § 3056.

Usually calls for distance which are qualified by words relieving exactness also call for a monument or adjoinder as a terminus. In such situations the general rule for construction of instruments of conveyance requiring that a call for distance yield to a call for a monument or adjoinder, 9 Tex.Jur.2d 500, Boundaries, § 22, will ordinarily relieve exactness in the entire distance call and render the qualifying words meaningless. But distance calls do not always call for a monument or adjoinder as a terminus. When they do not do so, qualifying words relieving exactness should be disregarded *unless the evidence establishes that the intention of the parties to the instrument would thereby be defeated.* As an example of a case in which qualifying words would not be disregarded, let us consider that A owns a residential lot fronting North 100 feet on Sixteenth Street with a depth of 150 feet, bounded on the East by a lot owned by B and on the West by a lot owned by C. A wishes to sell and D wishes to buy the lot. They go upon the ground where A correctly points out the corners and boundary lines. A believes the lot is only 99 feet in width. The metes and bounds description of the lot contained in the deed conveying the lot to D calls for the northwest corner of B's lot as the point of beginning and then continues as follows: "thence West along the south line of Sixteenth Street for a distance of 99 feet, more or less; thence south 150 feet; thence East 99 feet, more or less, to the southwest corner of B's lot; thence along the western line of B's lot to the place of beginning." With only the recited facts in evidence before a court, it is hardly thinkable that the court would hold that the words "more or less" should be disregarded as a matter of law, thus putting D to the task of prevailing in a reformation suit as the only alternative to limiting the width of the lot to 99 feet and leaving title to a useless strip, 1 x 150 feet, in A. Cf. Goodloe v. Wallace (Ky.), 269 S.W.2d 718 (1954).

In this case Ralph had the burden of establishing that by use of the words "more or less" the parties intended that the distance call for 3 feet be extended beyond that distance. Intention of the parties is ordinarily a fact question. The trial court made extensive fact findings, but did not find that the parties intended that the distance call for 3 feet should be extended or that the strip it bounded should be wider. On the contrary, the court found that the deed to Ralph "granted a strip of land three (3') feet wide extending from West 16th Street south to the main body of land described in said deed." There is no basis in the evidence for holding that the court was required to find otherwise. There is no evidence that a 3-foot walkway from Sixteenth Street to the main body of the property is not adequate for the purpose, and no evidence that all property west of that distance is not useful to Max. Establishment of the common boundary at the western edge of the concrete walkway would extend the 36-inch distance call on Sixteenth Street by 21.6 inches. We hold that the trial court did not err in rendering judgment requiring Ralph to remove in a workmanlike manner that part of his concrete walkway west of a line three feet distant from the Sparks property as established by the survey of Marlton O. Metcalfe. We agree with the holding of the Court of Civil Appeals that the trial court did not err in permitting Max to seek a mandatory injunction by trial amendment.

*Damages*

Ralph sought by his suit to recover damages because of interference by Max with his use of the driveway easement. The trial court's judgment denied him a recovery of damages. He had no point of error before the Court of Civil Appeals complaining of the denial of damages, and his claim therefor has been abandoned.

*Judgment*

The cause of action of Ralph Bickler for establishment of an easement on and over the lot owned by Max Bickler for a driveway is severed from the remainder of the

suit, and the judgment of the trial court and Court of Civil Appeals that Ralph Bickler take nothing in such severed cause is reversed, and the cause is remanded to the trial court with instructions to hear evidence therein, if necessary, and to render judgment establishing the boundaries of the easement and requiring Max Bickler to remove any and all obstructions to a reasonable use thereof. In all other respects the judgments of the courts below are affirmed. Costs in all courts are adjudged one-half to Ralph and one-half to Max.

STEAKLEY, J., not sitting.