

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00007-CV

**13 HEIN, L.L.C.** and Robert P. Hein,
Appellants

v.

Analicia **PENA DE BECERRA**, Federico Javier Pena Llanos, Lilia Leticia Pena de Borrego,
Hilde Pena de Trad, Elsa Pena Cass, Zimmerman Limited Partnership No. 1,
Appellees

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2014-CVF-001164-D4
Honorable Oscar J. Hale, Jr., Judge Presiding

**OPINION ON APPELLANTS' MOTION FOR REHEARING**

Opinion by:     Rebeca C. Martinez, Justice

Sitting:        Karen Angelini, Justice
                Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed: December 27, 2018

AFFIRMED

The motion for rehearing filed by appellants 13 Hein, L.L.C. and Robert P. Hein is denied. The court's opinion and judgment dated July 11, 2018 are withdrawn, and this opinion and judgment are substituted in its place. In this opinion, we address appellants' express easement argument.

13 Hein, L.L.C. and Robert P. Hein (collectively, Hein) appeal the final judgment rendered in favor of Zimmerman Limited Partnership No. 1. We affirm the judgment of the trial court.

## BACKGROUND

The underlying dispute concerns three contiguous tracts of land—El Varal Pasture, El Brazil Pasture, and La Copa Pasture—located in Webb and Zapata Counties. This is the fifth appeal in the last 70 years related to the properties at issue.[1] La Copa Pasture and El Brazil Pasture are next to each other, with La Copa to the west and El Brazil to the east. The majority of the El Varal Pasture is directly south of La Copa Pasture, but its northeast corner borders the southwest corner of El Brazil Pasture. There are no public roads within any of the three tracts, but there is a public road adjacent to La Copa Pasture and a private road that travels from the public road, across La Copa Pasture, and into El Brazil Pasture.

The location of the properties was depicted in a map in this court's opinion of *Pena v. Salinas*, 734 S.W.2d 400, 404 (Tex. App.—San Antonio 1987, writ ref'd n.r.e.):



All of the three properties once belonged to Henry Hein, Sr. *See id. at* 401. When Henry, Sr. died on April 5, 1920, all of his property passed to his three children, Maria Hein de Llanos, Conrad Hein, and Henry Hein, Jr., in undivided one-third interests.

---

[1] *See Zapata County v. Llanos*, 239 S.W.2d 699 (Tex. App.—San Antonio 1951, writ ref'd n.r.e.); *Sisco v. Hereford*, 694 S.W.2d 3 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.); *Pena v. Salinas*, 734 S.W.2d 400 (Tex. App.—San Antonio 1987, writ ref'd n.r.e.); *Briones v. Solomon*, 769 S.W.2d 312 (Tex. App.—San Antonio 1989, writ denied).

In 1921, Maria and Henry, Jr. acquired Conrad's interest in 1,200 acres out of the La Copa and El Brazil Pastures. In 1923, Conrad sold his remaining interest in the La Copa and El Brazil Pastures to G.W. Sprague. The conveyance was made subject to a prior recorded deed of trust covering Conrad's interest in the La Copa and El Brazil Pastures. After a foreclosure sale pursuant to the terms of the deed of trust and a subsequent liquidation sale, Union State Bank and Trust Company of Laredo (the "Bank") became the owner of Sprague's interest in the La Copa and El Brazil Pastures.

In 1925, Henry, Jr., Maria, and Conrad partitioned El Varal Pasture among themselves. Attorney W.W. Winslow helped the siblings with the partition, and as payment for that assistance, Henry, Jr. conveyed an undivided one-third interest in his own one-third interest in El Varal Pasture, i.e., a one-ninth undivided interest, to Winslow. When Conrad died in 1925, his surviving widow and children inherited his interest in El Varal Pasture.

In September 1928, Maria, Henry, Jr., and the Bank partitioned their interests in the La Copa and El Brazil Pastures, with the Bank taking the western half of La Copa Pasture, Maria taking the eastern half of La Copa Pasture which became known as the Zimmerman Ranch, and Henry, Jr. taking the entirety of El Brazil Pasture which became known as the Brazil Ranch. Because the 1928 partition left Henry, Jr. without access to a public road to the Brazil Ranch, the 1928 partition deed granted Henry, Jr. and those claiming under him "a reasonable right of egress and ingress over that portion of the lands partitioned to [the Bank] and [Maria] lying between [the Brazil Ranch] and the Laredo-Zapata Highway." Later that same month, Henry, Jr. conveyed his remaining interest in El Varal Pasture to Maria. After the 1928 partition and conveyance, the parties held the three tracts as follows:

| Western Half of La Copa Pasture | Eastern Half of La Copa Pasture (Zimmerman Ranch) | El Brazil Pasture (Brazil Ranch) | El Varal Pasture |
|---|---|---|---|
| The Bank | Maria | Henry, Jr. | Maria (five-ninths) |
| | | | Conrad's heirs (one-third) |
| | | | W.W. Winslow (one-ninth) |

In 1929, a Webb County court entered an Agreed Partition Judgment that split El Varal Pasture into four separate tracts as follows: (1) Maria was granted Share No. 1, the western two-thirds; (2) Conrad's heirs were granted Share No. 2, the northern half of the eastern third which became known as Sullivan Ranch; (3) Winslow was granted Share No. 3, the middle quarter of the eastern third; and (4) John A. Pope, Sr., John A. Pope, Jr., and Bismark Pope were granted Share No. 4, the southern quarter of the eastern third. After the 1929 partition, the ownership of the three tracts was as follows:[2]

| Western Half of La Copa Pasture | Eastern Half of La Copa Pasture (Zimmerman Ranch) | El Brazil Pasture (Brazil Ranch) | Share No. 1 El Varal Pasture | Share No. 2 El Varal Pasture (Sullivan Ranch) | Share No. 3 El Varal Pasture | Share No. 4 El Varal Pasture |
|---|---|---|---|---|---|---|
| The Bank | Maria | Henry, Jr. | Maria | Conrad's Heirs | W.W. Winslow | The Popes |

Maria's daughter, Enriqueta, eventually inherited the Zimmerman Ranch. Henry, Jr.'s son, Robert, eventually took ownership of the Brazil Ranch, which he then conveyed to 13 Hein. Because the Brazil Ranch remained landlocked, Robert and the other agents of 13 Hein continued to access it via the easement across La Copa Pasture that Henry, Jr. acquired in the 1928 partition.

---

[2] At some point after 1929, Maria purchased Share No. 3 from Winslow, and after Henry, Jr. died, his widow, Luz Almaraz Hein, purchased Share No. 4 from the Popes.

In the 1980s, a dispute arose over the easement, and a number of plaintiffs, including Robert Hein, sought declaratory judgment to resolve their interests in the easement. A 1985 final judgment confirmed that Robert Hein and his fellow plaintiffs owned an ingress/egress easement and specified the path of the easement ran from a gate on a county road at the western boundary of La Copa Pasture, through La Copa Pasture and the Zimmerman Ranch, and to the shared boundary line between the Zimmerman Ranch and the Brazil Ranch at a point "6,022.6 feet from the southwest corner of the Brazil Ranch." Based on the 1985 judgment, the parties agree Hein has an easement to use the private road that travels across La Copa Pasture and the Zimmerman Ranch for ingress and egress to the Brazil Ranch.

In 2008, Robert Hein acquired the Sullivan Ranch from Conrad's heirs which he later conveyed to 13 Hein. It is undisputed that the Sullivan Ranch is contiguous with Hein's other property, the Brazil Ranch, and that it can be accessed directly from the southwest corner of the Brazil Ranch.

After Hein acquired the Sullivan Ranch, Arthur Zimmerman,[3] who had acquired Enriqueta's interest in the Zimmerman Ranch, informed Robert and the other agents of 13 Hein that they could not use the easement across the Zimmerman Ranch if they intended to continue across the southwest corner of the Brazil Ranch onto the Sullivan Ranch. Arthur erected a sign at the entrance of the Zimmerman Ranch that warned would-be visitors to Hein's property against using the easement to access any land other than the Brazil Ranch.

In 2015, Hein filed a lawsuit against Zimmerman seeking a declaration that the express easement in the 1928 partition and the 1985 judgment also gave Hein the right to travel over the Brazil Ranch to and from the contiguous Sullivan Ranch via the same road. Hein later amended

---

[3] Arthur Zimmerman is the principal of Zimmerman Limited Partnership No. 1.

the petition to seek a declaration that an implied easement by necessity to reach the public road exists across La Copa Pasture, the Zimmerman Ranch, and the Brazil Ranch in favor of the Sullivan Ranch because the Sullivan Ranch is landlocked.

Zimmerman and Hein both filed motions for summary judgment on Hein's claims. The trial court granted Zimmerman's motion for partial summary judgment on Hein's express easement claims on August 31, 2015; however, the trial court initially denied Zimmerman's motion for summary judgment on Hein's easement by necessity claim because it found that a fact question existed "as to necessity for road access."

On June 27, 2016, Hein filed a motion for partial summary judgment asserting the first and third elements of the implied easement by necessity claim were established as a matter of law. Zimmerman filed a competing motion for summary judgment challenging the first element of that claim: "unity of ownership of the alleged dominant and servient estates before severance." The trial court granted Zimmerman's motion and denied Hein's motion. After a bench trial on attorney's fees, the trial court entered a final judgment in Zimmerman's favor on December 12, 2016.

## DISCUSSION

In its first issue on appeal, Hein argues the trial court erred in granting summary judgment on the first element of his implied easement by necessity claim in favor of Zimmerman.

### Standard of Review

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment is appropriate when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law on the issues presented. TEX. R. CIV. P. 166a(c). A defendant may obtain summary judgment by, among other things, conclusively negating at least one element of the plaintiff's cause of action. *Frost Nat'l*

*Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). In reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Valence Operating Co.*, 164 S.W.3d at 661. When faced with competing summary judgment motions where the trial court denied one and granted the other, we consider the summary judgment evidence presented by both sides, determine all questions presented, and if the trial court erred, render the judgment the trial court should have rendered. *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 583 (Tex. 2015).

### *Easement By Necessity*

Whether a property owner is entitled to an easement by necessity is a question of law, although underlying factual issues may need to be resolved in order to reach the legal question. *Benedictine Sisters of the Good Shepherd v. Ellison*, 956 S.W.2d 629, 631 (Tex. App.—San Antonio 1997, pet. denied). When an owner conveys part of a tract of land and retains a landlocked portion, a right of way by necessity over the portion conveyed is implied so the owner of the landlocked part can access it. *See Koonce v. J.E. Brite Estate*, 663 S.W.2d 451, 452 (Tex. 1984). The party claiming a necessity easement must show: (1) unity of ownership of the alleged dominant and servient estates before severance; (2) the claimed easement is a present necessity and not a mere convenience; and (3) the necessity for the easement existed when the two estates were severed. *Staley Family P'ship, Ltd. v. Stiles*, 483 S.W.3d 545, 548 (Tex. 2016). The party claiming a necessity easement has the burden to prove all facts necessary to establish it. *Id.* To establish unity of ownership the claimant must prove his grantor owned the dominant and servient estate as a unit or single tract prior to severance. *Koonce*, 663 S.W.2d at 452. The parcel owned by the grantor of the easement is the "servient estate," and the parcel benefitted by the easement is the "dominant estate." *Hubert v. Davis*, 170 S.W.3d 706, 710 (Tex. App.—Tyler 2005, no pet.).

*Application*

Hein argues that an easement by necessity burdening the Zimmerman Ranch was impliedly created for the benefit of the Sullivan Ranch as a result of the 1929 partition judgment. As such, Hein had the burden of proving that, in 1929, the Sullivan Ranch and the Zimmerman Ranch were commonly owned as a single tract or unit. The Sullivan Ranch did not come into existence until El Varal Pasture was partitioned in 1929, and thus we consider whether unity of title existed between the La Copa and El Brazil Pastures (the alleged servient estates) and El Varal Pasture (the alleged dominant estate) at the time of the 1929 partition judgment.

Zimmerman Ranch is part of La Copa Pasture, and the Sullivan Ranch is part of El Varal Pasture. The summary judgment evidence established that Conrad Hein sold his interest in La Copa Pasture and El Brazil Pasture to G.W. Sprague in 1923. Zimmerman thus argues that the 1923 conveyance destroyed any unity of title that may have previously existed. After 1923, ownership of the three pastures was as follows:

| La Copa Pasture and El Brazil Pasture | El Varal Pasture |
|---|---|
| G.W. Sprague | Conrad |
| Maria | Maria |
| Henry, Jr. | Henry, Jr. |

Thus, it is undisputed that since 1923, the three pastures have not been owned by a common group of owners as a single tract or unit.

Hein responds that the Sprague conveyance is insignificant because it did not destroy Maria's unified ownership of the Sullivan and Zimmerman Ranches. Hein argues that unity of ownership is shown by the following facts: 1) all three tracts once belonged to Henry, Sr. and then to his children in undivided one-third interests; 2) in 1928, when Maria acquired sole ownership

of the land that is now the Zimmerman Ranch, she still had an undivided five-ninths interest in all of El Varal Pasture, including what is now the Sullivan Ranch; and 3) immediately before El Varal Pasture was partitioned to create the Sullivan Ranch in 1929, El Varal Pasture and the Zimmerman Ranch shared a common owner—Maria. In essence, Hein argues the unity element can be established if two separate tracts, with different owners, share a single common owner.

We cannot agree that Hein's single-common-owner theory satisfies the unity of ownership element as a matter of law. The Texas Supreme Court held in *Koonce* that a single common owner in two or more separate tracts with different co-owners fails to satisfy the unity of title element. *See Koonce*, 663 S.W.2d at 452. "To establish unity of ownership the claimant must prove prior to severance, his grantor owned the dominant and servient estate as a unit or single tract." *Id*. In *Koonce*, Mabel Brite owned an undivided interest in two tracts. *See id*. The first tract was owned by Mabel and Genevieve Koonce. *Id*. The second (landlocked) tract was owned by Mabel and her husband, J.E. Brite. *Id*. Upon Mabel's death, her interests passed to her husband. J.E. Brite then owned an undivided interest in the first tract with Genevieve and a fee simple interest in the second tract. *Id*. After J.E. Brite's death, his estate claimed that an easement by necessity existed from the landlocked second tract over the first tract. *Id*. The court held that even though there was a common owner in both tracts, there was no unity of title because the two tracts were not owned as a single tract with the same owner. *See id*. ("There is no evidence the 10-acre tract and the 284 acres were ever owned as a unit by J.E. Brite. Therefore, we hold the J.E. Brite Estate failed to establish the element of unity of ownership between the dominant and the servient estate.").

Because the summary judgment evidence in the instant case established as a matter of law that unity of title did not exist between the three tracts of land at the time the Sullivan Ranch was severed in the 1929 partition, the trial court did not err in granting Zimmerman's motion for

summary judgment on the first element of Hein's implied easement claim. *See Holden v. Weidenfeller*, 929 S.W.2d 124, 129 (Tex. App.—San Antonio 1996, writ denied) (burden of establishing elements of implied easement by necessity is on the party claiming the easement). We overrule Hein's first issue.

### Express Easement

In its second issue on appeal, Hein argues the trial court erred in granting Zimmerman's motion for partial summary judgment on Hein's express easement claim. Again, we review a trial court's summary judgment ruling de novo. *Valence Operating Co.*, 164 S.W.3d at 661. Summary judgment is appropriate when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law on the issues presented. TEX. R. CIV. P. 166a(c).

Unlike an implied easement, an express easement must comply with the Statute of Frauds, which requires a description of the easement's location. *Severance v. Patterson*, 370 S.W.3d 705, 736 (Tex. 2012) (citing *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex. 1983)). We apply basic principles of contract construction and interpretation when considering an express easement's terms. *Marcus Cable Associates, L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002). The contracting parties' intentions, as expressed in the grant, determine the scope of the conveyed interest. *Id.* at 700-01. When the grant's terms are not specifically defined, they should be given their plain, ordinary, and generally accepted meaning. *Id*. "An easement's express terms, interpreted according to their generally accepted meaning, therefore delineate the purposes for which the easement holder may use the property. Nothing passes by implication 'except what is reasonably necessary' to fairly enjoy the rights expressly granted. Thus, if a particular purpose is not provided for in the grant, a use pursuing that purpose is not allowed." *Id*. (internal citations omitted).

*Application*

Here, the parties do not dispute that the express easement in question[4] allows Hein to enter La Copa Pasture via the public road and use a private road that travels across the land—including the Zimmerman Ranch—to reach the border of the Brazil Ranch. They do, however, disagree as to whether the easement allows Hein to travel from the Brazil Ranch to the Sullivan Ranch, which was not acquired by Hein until 2008. In its motion for partial summary judgment on Hein's express easement claim, Zimmerman argued that Hein's attempted expansion of the easement was unauthorized pursuant to *Bickler v. Bickler*, 403 S.W.2d 354 (Tex. 1966). In *Bickler*, Ralph Bickler attempted to gain access to his property by buying a 20-foot strip of property from S.M.N. Marrs which adjoined the property he already owned. *Id*. at 357. The Marrs property benefited from an 8-foot easement across the neighboring tract. *Id*. Bickler sought to use the 8-foot easement to travel to his newly-acquired 20-foot tract and then travel from there to his other property which was adjacent to the 20-foot tract. *Id*. The Texas Supreme Court held that Bickler had no legal right to do so. *Id*. at 359. The court rested its holding on "the rule of law stated in 2 Thompson on Real Property, 1961 Replacement Ed., 565-566, § 386":

> Rights of way granted or reserved are appurtenant to the dominant tenement, and can be used only for the purposes of that tenement. * * * One having a right of way appurtenant to specified land cannot lawfully use the way to reach another tract owned by him to which the way is not appurtenant. * * * The way is granted for the benefit of the particular land, and its use is limited to such land. Its use cannot be extended to other land, nor can the way be converted into a public way without the consent of the owner of the servient estate.

*Id*.

---

[4] The 1928 Partition Deed provides:

> That the said Henry Hein and those claiming under him the land hereby partitioned to him are entitled to and are hereby given a reasonable right of egress and ingress over that portion of the lands partitioned to the said Union State Bank & Trust Company of Laredo and the said Maria Hein de Llanos lying between the lands awarded to him and the Laredo-Zapata Highway.

*See Pena v. Salinas*, 734 S.W.2d 400, 401 (Tex. App.—San Antonio 1987, writ ref'd n.r.e.).

We agree that *Bickler* controls in this instance. The easement created in the 1928 Partition Deed is for the benefit of the Brazil Ranch only and may not be used to access any other property, including property owned by the owners of the Brazil Ranch. Thus, Zimmerman proved its entitlement to judgment as a matter of law on Hein's express easement claim.

Based on the record before us, we cannot conclude the trial court erred in granting Zimmerman's motion for partial summary judgment on Hein's express easement claim. Accordingly, we overrule Hein's second issue. Given our disposition, we need not address Hein's third issue related to attorney's fees.

## CONCLUSION

We affirm the judgment of the trial court.

Rebeca C. Martinez, Justice