FRED WIESE v. JOHN THIEN et al., Appellants.

Division One, September 27, 1919.

1. **PRIVATE ROAD: Easement at Common Law.** The doctrine of private ways existed at common law, and was usually founded on a presumption of grant or reservation; as where one sold a close surrounded by his own estate he was presumed to grant the easement of access, or if he sold his surrounding estate and reserved the close a reservation of the same easement would be presumed. And it was this doctrine of presumed easement which the State recognized and perhaps enlarged in Section 20 of Article 2 of its Constitution.

2. ———: **Pleading: Accessible.** The statute (Sec. 10447, R. S. 1909), prescribing the manner in which an easement of access by a private road may be acquired, prescribes no formula of words in which the petition must set forth that the petitioner is the owner of the tract of land for which the easement is desired and that no public road passes through it or touches it. Any words that expressed these facts in plain and unmistakable terms are sufficient; and if it uses such words, the petition is not defective or insufficient for that it does not employ the work "accessible" used in the statute.

3. ———: **Character of Easement and Lands.** The right to an easement of access to private lands is not personal, but pertains to the land to which it becomes appurtenant; and the right does not depend upon the extent of the tract, nor the number of acres owned by petitioner, nor upon the lines of Government subdivisions, but it may be invoked where the petitioner owns lands on both sides of an impassable stream, and for the benefit of that part of the tract which lies on the opposite side of the stream from a public road which touches the part on that side at one corner.

4. ———: **High Bluffs: Prohibitive Expense.** The fact that the part of petitioner's tract on the side of an impassible stream, which part is touched at one corner by a public road, consists of high bluffs and craigs, and that the expense of constructing a road on that side would be prohibitive, is a strong reason for creating a private way of access to the part of the tract on the opposite side.

5. ———: **Pleading: Showing Present Access.** And the mere fact that the petitioner in his petition has described that part of his tract on the side of the impassable stream, which at one corner is touched by a public road, does not preclude him from presenting his claim to a private way to the part of the tract on the opposite side.

Appeal from Gasconade Circuit Court.—*Hon. R. A. Breuer,* Judge.

AFFIRMED.

*W. S. Pope* and *Robert Walker* for appellants.

(1) Neither the petition nor the evidence shows that petitioner is the owner of a tract of land not passed through or touched by a public road. Under the admitted facts, petitioner is not entitled to the private road petitioned for. Sec. 10447, R. S. 1909; Chandler v. Reading, 129 Mo. App. 63. (2) Under the admitted facts, the private road petitioned for is not a way of strict necessity. Colville v. Judy, 73 Mo. 651; Cox v. Tipton, 18 Mo. App. 450; Barr v. Flynn, 20 Mo. App. 383; Coberly v. Butler, 63 Mo. App. 556. (3) The facts in the case do not come within the purview of the provisions of Sec. 10459, R. S. 1909.

*J. W. Hensley* and *Clarence G. Baxter* for respondent.

(1) The petition in this case states a cause of action: (a) Under the common law as applicable in this State. Tiedeman on Real Property (2 Ed.), sec. 609; (b) Under Sec. 20, Art. 2, Mo. Constitution; (c) Under Sec. 16, p. 658, Laws 1913; (d) Under Sec. 28, p. 661, Laws 1913. (2) Private property may be taken for private use for private ways of necessity. Sec. 20, Art. 2, Mo. Constitution. This section of the Constitution is self-enforcing. Householders v. Kansas City, 83 Mo. 488; Hickman v. City of Kansas, 120 Mo. 110; McGrew v. Railroad, 230 Mo. 548. (3) The Constitution of Missouri must be construed according to its obvious meaning. Hamilton v. St. Louis County Court, 15 Mo. 3. (4) Technical terms such as "ways of necessity" should be read and construed along with and in the light of the common law. Lowe v. Summers, 69 Mo. App. 637. (5) The Constitution of Missouri seems more liberal in the matter of granting private ways of necessity than the common law, because the common law required that ways be of "strict necessity." Belk v. Hamilton, 130 Mo. 299; Tiedeman on Real Property (2 Ed.), sec. 609. (6) Courts are not bound by legislative construction of the Constitution, neither did the Legislature intend to limit the constitutional right to private way of necessity by the enactment of Sec. 16, p. 658, and Sec. 28, p. 661, Laws 1913, or either of them, for the reason that these statutes seem to be declaratory of two instances of ways of necessity, defining same, and do not preclude the idea that there may be other instances of what might be in fact a way of necessity. Householders v. City of Kansas, 83 Mo. 488. (7) Excessive expense in procuring another way would make the way petitioned for in this case a way of strict necessity. Tiedeman on Real Property (2 Ed.), sec. 609. (8) The statute under whch the petition is drawn (Sec. 16, p. 658, Laws 1913), in its use of the

words "public road," contemplates an accessible public road. Where there is no accessible public road passing through or touching petitioner's land where he lives and farms, then within the meaning of the law, there is no public road. A road that cannot be used by petitioner is, so far as he is concerned, no road.

BROWN, C.—This is a proceeding to open and establish a private road over the lands of appellants, connecting the lands owned and occupied by the respondent with a public road running some distance to the west of it. It was begun in the County Court of Gasconade County, in which county the petitioner resides and all the lands involved are situated. The road was laid out and established in due course by the county and damages regularly accessed. An appeal was taken from that court to the Gasconade Circuit Court where the matter was retried, and the court made its findings as required, which are fully sustained by the evidence. The findings and judgment of the circuit court were made and entered at the January term, 1916, and are as follows:

"Now on this day the above cause coming on to he heard, and the plaintiff, Fred Wiese, appearing in person and being represented by counsel, and the defendants, John Thein and Vincenit Skornia, both appearing to this suit in person and being represented by counsel, and the matters in issue being taken up and considered by the court, and the court, after seeing and hearing the evidence adduced by the plaintiff and the defendants and each of them, finds for plaintiff, Fred Wiese; finds that the said Fred Wiese is an inhabitant of Gasconade County, in the State of Missouri; that he is the owner of the south half of the northeast quarter of Section 21, Township 41 North, Range 4 West, in Gasconade County, Missouri, upon which he resides with his family; that the Bourbois River crosses the east end of his said lands in a general north to south direction, about 200 yards west of and

nearly parallel to the east boundary line of plaintiff's said lands, and that plaintiff's residence, barn and all his buildings and all his tillable lands lie on the west side of said river, and that all that part of his lands lying on the east side of said river consists of and is a very high, rough and rugged bluff, rising steep and rocky from the water's edge, the lower part of which consists of ledges of wall rock, the other and top part of which is rough and uneven, and mostly covered with huge boulder rocks; that the east end of plaintiff's land abuts on the Franklin County line, and that no public road passes through or touches plaintiff's said lands, except on top of said bluff at the southeast corner of his said lands for a distance of sixtynine feet; that it would be impracticable to build and construct a roadway from plaintiff's tillable lands and residence on the west side of said river, to the east and across said river over any part of said bluff to said public highway, at the southeast corner of plaintiff's said lands; and if such could be done, it would require an excessive expenditure of approximately four thousand dollars of money, and would be confiscatory of plaintiff's said lands, and further should this be done the ford of the river would be impracticable, because during a large portion of the seasons it would not be fordable on this part of the river, and such roadway from any point along this part of said river over any part of said bluff to the public road at the southeast corner of plaintiff's lands would necessarily be steep, and that after reaching the public road at this point, plaintiff could only travel in one direction, and then going nearly in an opposite direction from school, post office and trading point, as this public road starts at this point and runs in a southwest direction a distance of one and one-half mile to and across the river, thence west to and connecting with a south-to-north public road, which runs about one mile west of plaintiff's said lands, over the Bourbois bridge, through the town of Tea to Owensville and Rosebud, plaintiff's trading points on the Chicago, Rock Is-

land & Pacific Railroad, and that this road crosses the said river at Tea post office about two miles northwest of plaintiff's farm, over the bridge over said river; and that should plaintiff be forced to the last described route, he would in addition to incurring the excessive expenses aforesaid be required to cross said river twice, at impracticable fords not bridged, and be made to go a distance of three and one-half miles to public school, four and three-quarter miles to store and post office and about fifteen miles to trading stations on railroad, making the distance to said points at least three miles further than by the route asked for in plaintiff's petition; that plaintiff's lands lie within twenty miles of the Chicago, Rock Island & Pacific Railroad, a railroad running from east to west across said country, through Owensville and Rosebud, trading points about eleven miles north of plaintiff's farm; that there is no public road passing through or touching plaintiff's said lands except as aforesaid, which said way would be entirely impracticable, and that plaintiff has no other road or outlet from his said premises except over the lands of others; that the way herein petitioned for would be practicable, providing for plaintiff a way to school of less than one mile distance, and to railroad ten or eleven miles distance, and to store and post office two miles distance, and by giving the way petitioned for he would not have to cross said river in going to school, and in going to postoffice and railroad he could cross same by way of a bridge built by the taxpayers of said county for the convenience of all the people of the community where the parties to this suit live; the court further finds that the way and road herein prayed for is practicable, and a way of necessity within the meaning of the Constitution and laws of this State; that at a former trial of this matter in the county court in which all the parties to this suit appeared in person and by counsel, damages were awarded to John Thien as follows: No damages; and that damages

five dollars by the jury trials, and that in the trial of were awarded to Vincent Skornia in the sum of seventy-this case in this court it was agreed by all the parties to this suit that the damages awarded to the defendants in the county court were fair and reasonable, and that the same should be taken and adopted as the damages to be found and awarded in this trial in the event the issue should be found for the plaintiff.

"It is therefore ordered and adjudged by this court that the said private road be established according to the prayer of the petition and plat of same, to-wit:"

Here follows the description of the center line of the road twenty feet in width as located by the commissioners. The remainder of the judgment relates to the payment of damages and costs.

The petition is in two counts. The first asserts that the petitioner is an inhabitant of Gasconade County; that he owns the south half of the northeast quarter of Section 21 and all that part of the northeast quarter of the southeast quarter of Section 21 lying west of the Bourbois River, in Township 41 north, of Range 4 west, in said county; "that he has no road from said lands and premises except through gateways and over the lands of others." The second count states "that no accessible public road passes through or touches said land." Each count sets out in detail the necessity and use for a private road leading west from the premises described.

I. It will be seen from the foregoing statement that the only issue between these parties is a naked right of the petitioner under the Constitution and laws of this State to have access to the farm on which he resides through and over the lands of the defendants. There is no question of damages. These were admitted to be just and reasonable, and include all those elements which the law recognizes as subjects of pecuniary compensation. Whether the vigorous defense proceeds from a desire for a holiday in court or from a

patriotic impulse to vindicate the law can make no difference. The question involved is important, as well as interesting, and is here for our consideration.

The framers of our Constitution were not inventors of the doctrine of private ways of necessity. They existed by the common law, and were usually said to be founded upon a presumption of grant or reserva-

**Easement.** tion; as where one sold a close surrounded by his own estate he was presumed to grant the easement of access, or if he sold his surrounding estate and reserved the close a reservation would be presumed of the same easement. In Snyder v. Warford & Thomas, 11 Mo. 328, the same doctrine was said to apply to the United States as an original proprietor in the disposition of the public lands. Judge NAPTON speaking for the court said: "The United States being the proprietor of a section of land, entirely surrounded by eight other sections, sells the section so surrounded; the purchaser acquires, by the common law, a right of way to the land he has bought, as a necessary incident of the grant. The case is not altered by the United States selling the surrounding land to different individuals. The purchasers take it subject to the burden imposed on it whilst it belonged to the Government, the original proprietor." The State did not exceed its jurisdiction over private property within its limits by recognizing and perhaps enlarging the application of this principle in Section 20 of Article 2 of the State Constitution, by excepting private ways of necessity from its guaranty of inviolability and expressly vesting in the Legislature the power to prescribe the manner in which such easements might be acquired. It was in pursuance of the authority so conferred that Section 10447, Revised Statutes 1909, by which this proceeding must be judged, was enacted. It prescribes no formula of words in which the petition must be set forth that the petitioner is the owner of the tract of land for which the easement is desired, and that no public road passes through it or touches it.

**Petition.** Any words that express these facts in plain unmistakable terms are sufficient. This petition for instance states "that no accessible public road passes through or touches said land." The word "accessible" is relied on by appellants as rendering this petition insufficient and the judgment rendered upon it null and void. The argument implies that there could be such a state of facts that a public road might touch the land and still be absolutely inaccessible to it. This involves a distinction altogether too shadowy for application by a court. To relieve the law from the charge of absurdity we must assume that the Legislature intended such a contact with the premises involved as would give access to the premises and thus avoid the necessity upon which the legislative right is founded. The petition is good and needs only to be sustained by the facts.

II. As we have already seen the right conferred by this statute is not a personal one, but pertains to the land to which it becomes appurtenant. It is the situation of the land that calls for its application, and the owner for the time being is the instru- **Character of Easement and Lands.** ment by which the proceeding is instituted. The statute requires that he be the owner of a tract or lot of land and that no public road passes through or touches it, and it is to this tract alone that the right appertains. That the same proprietor has other lands in the same or adjoining counties does not impair his statutory remedy. The lines of Government subdivision have no application, even though they may be used in his title deeds to describe the extent of his holding. For instance; it is a matter of common knowledge that the Government, in surveying the public lands, frequently meanders a stream, so that no subdivision line is permitted to cross it; while in other cases, as appears to have been done in this, the subdivision lines cross the stream so that its bed is included in the description of sectional subdivisions. The

method adopted makes no difference in the rights of riparian proprietors in the bed of the stream, although these rights may perhaps be affected by the nature of the stream itself. But so far as the statute now under consideration is concerned, the fact that the proprietor who invokes its remedy with respect to lands bordering upon an impassible stream may also have lands on the other side cannot affect his right of access to either tract. The effect would be the same, in all respects, as if his holdings were separated by the lands of other proprietors.

In this case the farm of the petitioner is situated on the west bank of the Bourbois River at a point where the stream is unfordable throughout a considerable portion of each year. One of its Government subdivisions extends across the river a distance of about two hundred yards. The east bank of the river is formed by a palisade of perpendicular rock surmounted by boulders which cover practically the entire strip. On this bluff runs a road which touches the east line of the strip for a distance of sixty-nine feet, and then passes southwesterly away from it. The court has found that to construct a road from its farm to the road on the top of the bluff, so that it could be used only during that portion of the year when the stream was fordable would cost approximately four thousand dollars, which would be conficatory of his land, which means as far as it means anything that the cost would amount to as much or more than the value of his farm. It is perhaps unnecessary to take into consideration the fact that by passing this ford and climbing the bluff his children attain a school house less than a mile from his residence by going three and one-half miles and recrossing the river at another ford during that portion of the year when the stream is fordable. The same disparity of conditions exists in reaching available trading and shipping points. These facts force the conclusion that for the purpose to which the provisions of Section 10447 apply, the tract owned by peti-

tioner on the east side of the river is, within the meaning of this section, as much a separate tract of land as if it were situated on the other side of a meandered navigable river or miles away across the level prairie. The prohibitive expense of connecting these tracts for purposes of access to the farm on the west side of the river might of itself produce that result. [Tiedeman on Real Property (2 Ed.), sec. 609 and cases cited.] Yet in this case we have the added reason that the access so obtained would be entirely inadequate to the purpose which the law is designed to serve. That purpose is such communication with the vicinage as makes the estate inhabitable under conditions indispensable to its appropriate occupation and use.

III. The only remaining question is whether the mere fact that the respondent in his petition has described his holding as including the bluff on the east side of the river precludes him from presenting the case in the aspect we have considered. We do not think so. The disclosure of the real situation in his petition has no other or greater effect than does the disclosure of the same facts in evidence. He simply presented his entire case to the county court and called for the determination of his right, and the law will not punish him for that commendable course. We think that upon the whole case as presented in the petition and upon the trial he is entitled to the relief granted him in the circuit court and its judgment is therefore affirmed.

Precluded by Petition.

*Ragland* and *Small, CC.,* concur.

PER CURIAM:—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All of the judges concur; *Bond, J.,* in result.