**Geraldine DANIEL, Appellant,**

v.

**Harvey D. FOX and Malcolm J. Fox, Appellees.**

No. 04–95–00160–CV.

Court of Appeals of Texas, San Antonio.

Feb. 14, 1996.

David A. Young, Lee, Lee & Young, Mason, for appellant.

J. Terry Weeks, Austin, for appellees.

Before STONE, DUNCAN and CANTU, JJ.

## OPINION

ANTONIO G. CANTU, Justice,[1] Sitting by Assignment.

This is an appeal from a judgment awarding an "implied easement by necessity" following a trial to the court without intervention of a jury.

The suit arises under the Uniform Declaratory Judgments Act, TEX.CIV.PRAC. & REM. CODE ANN. § 37.001, et seq. (Vernon 1986), and was initiated by two brothers, Malcolm J. Fox and Harvey D. Fox, against various relatives, all owning an interest in separate parcels of realty in Mason County, Texas, which derive from a common source. Only one defendant below, Geraldine Daniel, has appealed a portion of the judgment entered by the trial court. We affirm.

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX.GOV'T

Appellant brings forth various complaints which may, essentially, be addressed in two groupings. Her first three points of error complain of the granting of an easement by necessity because:

(1) Appellees "having access to one part of their property cannot have an easement by necessity across another's land";

(2) the proof showed "that such easement was only reasonably necessary for the use and enjoyment of the Fox property, rather than being a strict necessity"; and

(3) "there was insufficient evidence to establish that the easement was a strict necessity."

Appellant's remaining three points of error argue, in the alternative, that if the trial court granted an implied easement, then the evidence was insufficient to establish that the easement was apparent and continuous and reasonably necessary to the use and enjoyment of the Fox tract as of the time of the severance of the dominant and servient estates.

■ We treat appellant's complaints as factual sufficiency challenges and review all the evidence. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). Unless the evidence, as a whole, is clearly insufficient and wrong, the points must be overruled. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

## FACTS

All the land in question was at one time owned by Adolph D. Kothmann, Sr. and Lydia Sophie Kothmann, the grandparents of both appellant and appellees, as well as the non-appealing defendants below, and was operated as unified ranchland. The ranch, in Mason County, was bounded on the east and west by neighbors' land, on the south by U.S. Highway 81 and on the north by the Llano River. Beaver Creek flows south to north through the middle of the ranch into the Llano River.

CODE ANN. § 74.003(b) (Vernon 1988).

In 1955, after the death of Adolph D. Kothmann, Sr., the surviving spouse, Lydia Sophie, pursuant to the terms of her husband's will, partitioned the ranch into five tracts, each containing 154.82 acres. Division was made parallel to the Llano River so that Beaver Creek would flow through all the tracts. Following a lottery drawing by each child, deeds were prepared granting ownership to the only son, Silas Kothmann, and to the four daughters, Lydia D. Kothmann Fuchs, Nellie Kothmann Hausler, Lillie Kothmann Wisseman, and Hulda Kothmann Pluenneke. Lydia D. Kothmann Fuchs (Fox), mother of the appellees, received the northernmost tract along the Llano River, and appellant's mother, Hulda Kothmann Pluenneke, received the southernmost tract of land. The interior tracts were deeded to two aunts and one uncle of both appellant and appellees.

Beaver Creek divides appellees' tract with approximately one-third of the land on the west side and two-thirds on the east side. Beaver Creek has a history of substantial rises and floods occurring at various times of the year, and no permanent vehicular crossings have ever been established which provide access between the western and eastern portions of the tracts.

During the history of the ranch, and prior to partition, there existed at least two ranch roads, one each on the west and east side of Beaver Creek, which essentially ran from U.S. Highway 87 to the Llano River. The main ancestral homestead was located on the west side of Beaver Creek but certain ranching operations were at one time performed on the east side of the creek. Among these operations were a sheep pen and a pecan grove close to the river. Access to all east side tracts, when they were unified, was made by exiting the western portion of the ranch onto U.S. Highway 87 and, after crossing a highway bridge over Beaver Creek, re-entering from the highway onto the eastern portion through a locked gate and following a dirt road which ran to the northernmost portion fronting the Llano River.

On July 19, 1974, Lydia D. Kothmann Fuchs deeded her tract to her sons, appellees herein. Neither appellee lived on the property and sometime that same year, appellees leased their property to their uncle Silas, who had remained on the homestead as a rancher. None of the other defendants resided on the property and had, in fact, also leased their tracts to Uncle Silas. Thereafter, due to bad health, Silas turned over the ranching operations, including the leased tracts, to his son Eldon Kothmann, a nonappealing defendant below. Sometime around June, 1991, after the expiration of the lease between appellees and Silas, appellees elected not to renew the lease, but instead sought to lease their northernmost tract to individuals for hunting purposes.

On October 30, 1991, Eldon Kothmann, through his attorney, demanded that appellees, as well as their tenants [hunters], discontinue use of both roads and finally erected a fence with a locking device to prevent entry by appellees. On March 14, 1992, appellees sent letters to all parties owning an interest in the other tracts requesting written affirmation of the two roadways as easements. After receiving no response to their requests, appellees, on June 26, 1992, filed their suit seeking declaratory judgment relief.

Prior to trial, Nellie Kothmann Hausler voluntarily granted appellees an easement across her property along both sides of Beaver Creek and she was dismissed as a defendant. During trial, all defendants acknowledged an easement in favor of appellees on the west side of Beaver Creek and such was no longer an issue at trial. At the conclusion of the trial, and after hearing the testimony of seven witnesses, the trial court awarded an "implied easement by necessity" in favor of appellees across all tracts on the east side of Beaver Creek. Only the owner of the southernmost tract has appealed.

The trial court's final judgment reads in pertinent part:

"The Court further finds that an implied easement of necessity exists along the Eastern portion of the property the subject of this suit, that being a portion out of Survey No. 10, Abstract No. 963 of the William Wells Grant in Mason County, Texas, which was originally partitioned from the Estate of Adolph D. Kothmann, Sr., et ux, Lydia Sophie, grandparents of

the Plaintiffs, and owned by Defendants, such easement being apparent, continuous, and in existence at the time of the partition. The Court, therefore, ORDERS, AFFIRMS and GRANTS an express easement appurtenant over the servient estates of the Defendants, etc. ..."

Appellant urges that it is unclear whether the trial court granted an implied easement[2] or an easement by necessity because the Court found the existence of an "implied easement of necessity." The inquiry should not center upon whether the easement is implied or of necessity, but rather upon whether the easement arose by implication as a result of reservation by the dominant estate or by way of grant to the dominant estate as a necessary means to ensure the enjoyment of the estate where one was neither expressly reserved nor granted.[3]

■ We begin by recognizing that an easement is a liberty, privilege, or advantage without profit granted to a person, either personally or by virtue of his ownership of a specified parcel of land, to use another parcel of land for some limited purposes. Easements in which the benefits are personal to an individual without regard for his ownership of a specified parcel of land are "easements in gross", whereas easements in which the benefits are for a specified parcel of land regardless of the identity of the owner are "easements appurtenant." *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 207 (Tex. 1962). Stated otherwise, the right of entrance to and exit from an estate is generally an appurtenant easement. *Kruegel v. Nitschmann*, 15 Tex.Civ.App. 641, 40 S.W.

68, 69 (1897, writ ref'd). We are concerned herein only with the latter type.

■ The parcel owned by the grantor of the easement is called the servient estate and the parcel benefitted by the easement is called the dominant estate. *Miller v. Babb*, 263 S.W. 253, 254 (Tex.Comm'n App.1924, judgm't adopted). A party seeking to establish the existence of an implied easement must show that (1) there was unity of ownership of the dominant and servient estates and that the use was (2) apparent, (3) in existence at the time of the grant, (4) permanent, (5) continuous, and (6) reasonably necessary to the enjoyment of the premises granted. *Bickler v. Bickler*, 403 S.W.2d 354, 357 (Tex. 1966); *Drye*, 364 S.W.2d at 207; *Hoak v. Ferguson*, 255 S.W.2d 258, 260 (Tex.Civ. App.—Ft. Worth 1953, writ ref'd n.r.e.); *Miles v. Bodenheim*, 193 S.W. 693, 696 (Tex. Civ.App.—Texarkana 1917, writ ref'd).

■ In Texas, the validity of an easement by implication depends on whether it is created by grant or by reservation. If the dominant estate is retained by the grantor, an implied easement is said to have been reserved, but if the dominant estate is conveyed, an implied easement is said to have been granted. *George v. Phillips*, 642 S.W.2d 275, 277 (Tex.App.—Texarkana 1982, no writ). In cases involving easements by "implied grant," it is sufficient if the easement in question was reasonably necessary to the convenient and comfortable enjoyment of the property as it existed when the severance was made. *Fender v. Schaded*, 420 S.W.2d 468, 472 (Tex.Civ.App.—Tyler 1967, writ ref'd n.r.e.); *Teich v. Haby*, 408 S.W.2d 562, 566 (Tex.Civ.App.—San Antonio 1966,

2. The Restatement of Property does not distinguish easements by necessity from easements created by other forms of implication. It rather treats together all easements created by implication.

3. The record shows that the judgment was signed on November 1, 1994, and that appellant timely filed Request For Findings of Facts and Conclusions of Law on November 18, 1994. Thereafter, on December 16, 1994, appellant filed her notice of past due Findings of Fact and Conclusions of law. The trial court did not respond by filing any Findings of Facts and Conclusions of Law as required.

On February 17, 1995, appellant filed an instrument titled "Defendants' Bill of Exception No. 1."

The latter two instruments contain Certificates of Service indicating delivery to different attorneys representing appellees at various stages of the trial and on appeal.

No complaint, however, has been made on appeal regarding the trial court's failure to comply with the requirements of Tex.R.Civ.P. 296 and 297 by assigned error. *See Cameron v. MacDonnell*, 659 S.W.2d 911, 912 (Tex.App.—Corpus Christi 1983, no writ hist.). Nevertheless, the trial court's judgment contains recitation of findings which we have considered in addressing the proffered points of error.

writ ref'd n.r.e.); *Barrick v. Gillette,* 187 S.W.2d 683, 687 (Tex.Civ.App.—Eastland 1945, writ ref'd w.o.m.); *Scarborough v. Anderson Bros. Const. Co.,* 90 S.W.2d 305, 310 (Tex.Civ.App.—El Paso 1936, writ dism'd). The situation of the parties at the time of the conveyances [partitions] constitutes the operative facts to support the claim of a grant by implication. *Hoak,* 255 S.W.2d at 260.

■ However, where the easement is created by implied reservation, a more burdensome test applies and strict necessity must be shown. *Drye,* 364 S.W.2d at 208; *Mitchell v. Castellaw,* 151 Tex. 56, 246 S.W.2d 163, 168 (1952). Texas law establishes that when a grantor conveys part of a tract of land while retaining the remaining acreage, an implied reservation of a right of way by necessity over the land conveyed exists if there is no other access to the land. *Koonce v. Brite Estate,* 663 S.W.2d 451, 452 (Tex. 1984).

■ To establish an easement by necessity, a party must establish (1) unity of ownership of the dominant and servient estates prior to severance, (2) the necessity of a roadway, and (3) that the necessity existed at the time the estates were severed. *Koonce,* 663 S.W.2d at 452; *Estate of Waggoner v. Gleghorn,* 378 S.W.2d 47, 48 (Tex.1964). Thus, it is seen that the rule requiring a showing that the use be apparent, permanent and continuous does not apply to a way of necessity. *Parker v. Bains,* 194 S.W.2d 569, 577 (Tex.Civ.App.—Galveston 1946, writ ref'd n.r.e.).

■ The way of necessity must be more than one of convenience. For, if the owner of the land can use another way, he cannot claim by implication to pass over land of another to get to his own. *Duff v. Matthews,* 158 Tex 333, 311 S.W.2d 637, 640 (1958); *Bains v. Parker,* 143 Tex. 57, 182 S.W.2d 397, 399 (1944); *Grobe v. Ottmers,* 224 S.W.2d 487, 488 (Tex.Civ.App.—San Antonio 1949, writ ref'd n.r.e.). However, a way of necessity may be created even though it is dependent on a connecting easement through the property of a third person. *Parshall v. Crabtree,* 516 S.W.2d 216, 219 (Tex.Civ.

App.—San Antonio 1974, writ ref'd n.r.e.). Merely showing that it would be expensive to obtain another outlet is not generally sufficient to establish a way of necessity. *Williams v. Kuykendall,* 151 S.W. 629, 630 (Tex.Civ.App.—Austin 1912, no writ).

■ It is apparent that whether an easement is denominated a "way of necessity" [*Grobe,* 224 S.W.2d at 487]; an "easement by necessity" [*Latimer v. Hess,* 183 S.W.2d 996 (Tex.Civ.App.—Texarkana 1944, writ ref'd)]; an "easement of necessity" [*Jordan v. Rash,* 745 S.W.2d 549 (Tex.App.—Waco 1988, no writ)]; an "implied easement by necessity" [*Koonce,* 663 S.W.2d at 451]; an "implied reservation of an easement by necessity" [*Bains v. Parker,* 182 S.W.2d at 399]; or an "implied grant of a way of necessity"; [*Persons v. Russell,* 625 S.W.2d 387 (Tex.App.—Tyler 1981, no writ); *Richter v. Hickman,* 243 S.W.2d 466 (Tex.Civ.App.—Galveston 1951, no writ)]; the elements of each are identical. In each case, what is being alluded to is an easement by necessity regardless of whether it also arises impliedly by way of reservation or grant.

■ In the instant case the dominant and servient estates were created at the time of partition and the children took their tracts burdened by any easement existing at the time of partition, some taking by implied grant and others subject to such implied grant of easement. *Beck v. Mills,* 616 S.W.2d 353, 355 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd). This rule is undoubtedly true about the roadway existing on the western portion of the various tracts, which no longer formed an issue before the trial court. We are persuaded that the trial court, by its language, intended and awarded an easement by necessity arising by implication by way of grant, and we will accordingly review the evidence under the guidelines controlling the establishment of such rights of way.

As heretofore recognized, the evidence must support a finding of unity of ownership of the dominant and servient estates prior to severance, the necessity of a roadway and the existence of such necessity at the time the estates were severed. *Koonce,* 663

S.W.2d at 452. There is no serious contention that all of the tracts were not at one time a single entity until the time of partition in June of 1955. It is contended, however, that a roadway on the eastern tracts was either rarely used or not strictly necessary for access to appellees' eastern tract.

Appellant reasons that, because appellees are able to reach their western portion through the conceded west easement, they are not entitled to easement by necessity running across her eastern portion to reach the eastern portion of their tract. It is well established that appellees may not be deprived of their right of way by the offer of another. *Parker*, 194 S.W.2d at 577. Nor should they have to voluntarily surrender an established right of way upon the suggestion that they use another one. There is much evidence that the roadway running through the eastern portions of the various tracts was in existence for many years prior to 1955 when the partition occurred.

Lydia Dessie Kothmann Fuchs, daughter of Adolph and Lydia Kothmann and the mother of appellees, 84 years of age at time of trial, recalled that the partition was effected in such a manner that all of her mother's children would have Beaver Creek running through their property and have access to water because the ranch was at that time dedicated to cattle ranching. She remembers two roadways on the ranch when she was a child, one on the west side of Beaver Creek where the homestead was located and running to the Llano River. The other roadway, which she described as a "good old ranch road", ran over the ranch portion lying east of Beaver Creek beginning at a gate off U.S. Highway 87, then known as Highway 9.

She recalled her father operating a sheep pen on the eastern portion of the ranch and having to obtain access by returning to the highway and crossing the bridge over Beaver Creek because it was too deep to cross otherwise. Even during dry seasons, she recalled inability to cross Beaver Creek on what is now appellees' portion of the ranch because Beaver Creek emptied into the Llano River there and provided the steepest embankments at that point. She further recalled her brother Silas always having to travel across the properties of their sisters, including appellant's mother's property, to get to his portion located east of the Beaver Creek. In 1955, when the partition occurred, she recalled cousins from San Antonio occasionally using the eastern roadway.

Appellee, Malcolm Fox, was 16 years old at the time of partition. He recalled travelling down the east roadway on many occasions to get to the river. According to his recollection, the roadway has always remained essentially the same. He never saw a car make it across the creek and remembers seeing some get stuck trying to do so. In his opinion, the only vehicle capable of crossing, during dry season, is a four-wheel drive vehicle with a high profile. He was certain that the roadway has been in continuous use since before 1955. Upon cross-examination he admitted that, with enough money, a bridge could be built across Beaver Creek, but it would cost $300,000 to build an all-weather bridge and $150,000 to build a good-weather bridge, figures that could exceed the value of the property itself.

We find overwhelming evidence that the roadway in controversy was in existence and being used as a necessity prior to and subsequent to 1955. It is argued by appellant that the degree of necessity falls short of that required for an easement by necessity. Appellant cites us to *Duff*, 311 S.W.2d at 637; *Mitchell*, 246 S.W.2d at 163; *Othen v. Rosier*, 148 Tex. 485, 226 S.W.2d 622, 625 (1950); and other subsequent pronouncements committing Texas to the doctrine of "strict necessity." Reliance is misplaced because appellant has failed to recognize the distinction between easements arising from implied reservations and implied grants and the degree of necessity ascribed to each.

The doctrine of strict necessity prohibits the imposition of a burden upon an estate for the mere convenience of another estate. Stated otherwise, it may be said that the necessity required is one of economical or physical use of the land and not merely an advantageous use of the land. *See Payne v. Edmonson*, 712 S.W.2d 793, 796 (Tex.App.— Houston [1st Dist.] 1986, writ ref'd n.r.e.). We hold that appellees have met their bur-

den of showing not only the required "reasonable necessity", but have further shown that when the only option opened to them is considered [that of prohibitive expense], it is clear that the necessity shown by them is more than for their mere convenience. Moreover, our Supreme Court has recognized that the term "strict necessity" is not hopelessly inelastic for sensible application to varying sets of facts. *Mitchell,* 246 S.W.2d at 168.

Other jurisdictions have recognized the flexibility necessary to a sensible application of the doctrine under contemporary conditions. In *Condry v. Laurie,* 184 Md. 317, 41 A.2d 66 (1945) and *Rose v. Denn,* 188 Or. 1, 213 P.2d 810 (1950), easements of necessity were sustained upon a showing that the cost of construction of a way over one's land as a means of access to a highway would require expense out of proportion to the value of the land. *See also Wiese v. Thien,* 279 Mo. 524, 214 S.W. 853 (1919) (disproportionate cost); *Miller v. Schmitz,* 80 Ill.App.3d 911, 36 Ill. Dec. 68, 400 N.E.2d 488 (1980) (disproportionate effect and expense); *Beeson v. Phillips,* 41 Wash.App. 183, 702 P.2d 1244 (1985) (cost prohibitive); *Liles v. Wedding,* 84 Or. App. 350, 733 P.2d 952 (1987) (exorbitant cost of building a permanent bridge).

The trial court correctly awarded an implied easement by necessity as a result of the implied grant arising at the time of partition. *Drye,* 364 S.W.2d at 208; *Exxon Corp. v. Schutzmaier,* 537 S.W.2d 282, 284–85 (Tex. Civ.App.—Beaumont 1976, no writ); *Fender v. Schaded,* 420 S.W.2d at 472; *George,* 642 S.W.2d at 278. We find it unnecessary to address appellant's remaining points of error seeking to make a distinction that is not material to the disposition we make. We deem it necessary to simply state that there is no material difference between the instant case and the facts reported in *Beck v. Mills,* 616 S.W.2d at 353.

Appellant's points of error are all overruled and the judgment of the trial court is affirmed.

DUNCAN, Justice, dissenting.

Under Texas law, a party may not have a way of necessity when he has another legal means of access to his property. *Bickler v. Bickler,* 403 S.W.2d 354, 357 (Tex.1966); *Duff v. Matthews,* 158 Tex. 333, 311 S.W.2d 637, 642–43 (1958); *Othen v. Rosier,* 148 Tex. 485, 226 S.W.2d 622, 625–26 (1950). Accordingly, since the Foxes indisputably have legal access to their property on the road to the west of Beaver Creek, I respectfully dissent.

### FACTS

As the majority opinion states, the Kothman Ranch was partitioned in 1955 into five tracts. The northern tract passed to Lydia Kothman Fuchs Fox, the mother of appellees, Harvey and Malcolm Fox. The southern tract passed to Hulda Kothman Pluehnke, the mother of appellant, Geraldine Daniel. The remaining three tracts passed to Silas Kothman, Nellie Kothman Hausler, and Lillie Kothman Wisseman. Beaver Creek crosses through the center of each of the four northern tracts.

By the time of trial, the layout and ownership of the tracts had changed. The northern tract had passed to Malcolm and Harvey Fox, while the southern tract had passed to Geraldine Daniel. The Foxes only rarely used their land, preferring instead to lease it to a hunter. The Daniels, on the other hand, had retired and were building a home on their tract not far from the road to the east of Beaver Creek. The maps below show the general layout of the property, as well as the ownership of the tracts after the 1955 partition and at the time of trial.

**1955 Partition**

Llano River
Lydia K Fuchs
Nellie K. Hausler
Silas Kothman
West Road
Lillie K. Wisseman
Beaver Creek
East Road
Hulda K. Pluehnke
Highway 87

**At Time of Trial**

Llano River
Malcolm & Harvey Fox
Nellie K. Hausler
Eldon Kothman
West Road
Beaver Creek
East Road
Geraldine Daniel
Highway 87

As stated by the majority, a dispute arose between Eldon Kothman and the Foxes regarding the Foxes and their hunter's use of the roads to the east and west of Beaver Creek. Ultimately, the Foxes filed suit, seeking easements permitting their use of both roads. Before trial, Ms. Hausler, then in her eighties, granted the Foxes easements through her property on both roads. During trial, Mr. Kothman—the remaining owner on the west—acknowledged an easement in favor of the Foxes on the road to the west of Beaver Creek. Therefore, by the time the case was submitted, the sole issue before the trial court was whether to recognize a way of necessity by implied grant on the road to the east of Beaver Creek.

The trial court's final judgment concluded that an "implied easement of necessity" existed on the road to the east of Beaver Creek because the road was "apparent, continuous, and in existence at the time of the partition." As the majority notes, only Mrs. Daniel has appealed. What the majority fails to note, however, is that only Mrs. Daniel has stand-ing to appeal since she is the only property owner to the east of Beaver Creek who has not voluntarily granted an easement.

## DISCUSSION

Under Texas law, if a grantor seeks an easement by necessity over a part of the land she has conveyed, she seeks a way of necessity by implied **reservation**. If, on the other hand, a grantee seeks an easement by necessity over lands once owned by a common grantor but conveyed to third parties, he seeks a way of necessity by implied **grant**. *See, e.g., Drye v. Eagle Rock Ranch, Inc.,* 364 S.W.2d 196, 205–09 (Tex.1962). The majority holds that the requirements for these two types of ways of necessity differ. I disagree.

In *Drye*, the supreme court recognized that the requirements for a way of necessity by implied **reservation** are three-fold:

1. The use must have been in existence and **apparent** at the time of the grant;

2. The use must have been **continuous** at the time of the grant such that it can

be inferred that the parties intended that its use pass by the grant; and

3. The use must be **necessary** to the use of the dominant estate.

*Drye,* 364 S.W.2d at 208–09. With respect to the third prong, the court reaffirmed its earlier holdings in *Duff v. Matthews,* 158 Tex. 333, 311 S.W.2d 637 (1958), and *Othen v. Rosier,* 148 Tex. 485, 226 S.W.2d 622 (1950), that Texas follows the doctrine "strict necessity" in cases involving ways of necessity by implied reservation. However, because the proposed easement in *Drye* failed to meet other prerequisites, the *Drye* Court stated that it need not decide the question of whether strict necessity was required in cases involving ways of necessity by implied grant. *Drye,* 364 S.W.2d at 208–09. This question was not finally resolved until *Bickler v. Bickler,* 403 S.W.2d 354, 357 (Tex.1966), and then only implicitly. *See Bickler,* 403 S.W.2d at 359 (distinguishing *Duff* and *Othen,* the leading way of necessity by implied reservation cases, on their facts and not because they involved ways of necessity by implied reservation, rather than grant).

In any event, regardless of whether a particular case involves a way of necessity by implied reservation or by implied grant, one principle is crystal clear: If a party has a legal means of access to his property, he is not entitled to a way of necessity. *Bickler,* 403 S.W.2d at 359 (because Ralph Bickler did not have a *legal* means of access to his property, an easement over Max Bickler's property was "still necessary"); *id.* (distinguishing *Duff* because the proof demonstrated that the plaintiff had "another way to plaintiff's lot which he had a legal right to use");[2] *id.* (distinguishing *Othen* because the plaintiff failed "to discharge his burden of proving that he had no other way of access"); *Parker v. Bains,* 194 S.W.2d 569, 577 (Tex. Civ.App.—Galveston 1946, writ ref'd n.r.e.) (reversing trial court's grant of two ways of necessity). This is true even if, because of natural barriers, the existing legal means of access does not provide vehicular access to all parts of the landowner's property. *See*

*Duff,* 311 S.W.2d at 642–43 (way of necessity on the "lower road" precluded because plaintiffs had legal access to their property via the "upper road" even though the upper road did not provide vehicular access to the lakefront portion of the plaintiffs' lots because of an intervening bluff). Curiously, while the majority recognizes this principle and even cites *Bickler, Drye, Duff,* and *Parker,* it completely disregards it in applying the law to the material undisputed facts before us.

### CONCLUSION

In this case, as in *Duff,* the evidence conclusively establishes that the Foxes have a legal means of access to their property—the road to the west of Beaver Creek. As a matter of law, therefore, they cannot show the degree of necessity required for a way of necessity by implied grant on the road to the east of Beaver Creek. Accordingly, I would reverse the trial court's judgment and render judgment declaring that the Foxes are not entitled to a way of necessity on the road to the east of Beaver Creek.

---

2. It appears that *Duff* involved a way of necessity by implied grant as to Pfeiffer and a way of necessity by implied reservation as to Matthews. *See Duff,* 311 S.W.2d at 641–43. In both situa-

tions, however, the court held that a way of necessity was precluded by the existing legal access along the upper road. *Id.*