TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00550-CV






L.T. Adams and Marjorie Adams, Appellants



v.



Norsworthy Ranch, Ltd., Appellee






FROM THE DISTRICT COURT OF HAYS COUNTY, 274TH JUDICIAL DISTRICT


NO. 95-0301, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING 






 Appellants L.T. and Marjorie Adams (the Adamses) filed suit against appellee
Norsworthy Ranch, Ltd. alleging a right to access their property by three routes crossing the
adjoining Norsworthy Ranch: express easement, easement by implication, and easement by
prescription. (1) Appellee filed a counterclaim seeking a declaration that the Adamses' right of
access was limited to one route expressly provided in a written easement agreement executed by
the previous owners of Norsworthy Ranch in favor of the Adamses. At the conclusion of a bench
trial, the court rendered judgment in favor of appellee. We will affirm the trial court's judgment.


BACKGROUND


 In 1941, John and Mayme Ruth Hunnicutt sold to the Adamses 24.86 acres of land
out of approximately 450 acres they owned in far west Travis County and Hays County. The
property purchased by the Adamses, bordered on the west by Roy Creek, the north by the
Pedernales River, and the south and east by the remainder of the Hunnicutt property, is beautiful
but rugged, with springs, large cypress trees and a canyon which at the property's south end is
fifty to sixty feet deep, full of boulders, and becomes progressively deeper as it approaches the
Pedernales River to the north. At the time of the purchase, the closest public road was the Austin
and Hamilton Pool Road, (2)
 which ran along the northern boundary of the Hunnicutt property. 
Thus, to have access to their property the Adamses had to cross the Hunnicutt property.

 About two months after the sale, the Hunnicutts executed and delivered to the
Adamses a written easement expressly granting the Adamses access to their property from the
Austin and Hamilton Pool Road. At that time, the Hunnicutt property was traversed by an old
mail route running from the Austin and Hamilton Pool Road along the eastern and southern edges
of the Adams property toward Dripping Springs. This road has now been paved and is known
as the Improved Ranch Road. Since their purchase of the property, the Adamses' primary access
to it has been from the Austin and Hamilton Pool Road along the Improved Ranch Road to a
second road, the Adams Ranch Road, which runs west from the Improved Ranch Road, then over
the Adams Access Road and onto their property at its northern end. 


 In the 1980s, Betty Norsworthy acquired the remainder of the Hunnicutt property
and an adjacent tract of land to the south, the whole of which is now referred to as Norsworthy
Ranch. She and her son later transferred Norsworthy Ranch to appellee Norsworthy Ranch, Ltd.

 In 1993, appellee installed a fence along the boundary between Norsworthy Ranch
and the Adams property, but gated the fence at the location where the Adams Access Road crosses
onto the Adams property. The Adamses thus now have access to their property over Norsworthy
Ranch by way of but a single route.

 The Adamses, however, claim three routes through Norsworthy Ranch and sued
appellee asserting the various easement claims and requesting damages and other ancillary relief. 
Appellee counterclaimed seeking a declaratory judgment limiting the Adamses to the single route
which existed after the construction of the fence. A bench trial was held, after which the trial
court rendered judgment in favor of appellee, holding that a single route had been granted in 1941
by express easement over the Improved Ranch Road to its intersection with the Adams Access
Road and then over the Adams Access Road to the Adams property. The trial court further held
that this is the only easement the Adamses are entitled to use to cross Norsworthy Ranch to and
from their property. Pursuant to the Adamses' request, the trial court made findings of fact and
conclusions of law. The Adamses also filed a motion to modify the judgment and a motion for
new trial, both of which were overruled by operation of law.


DISCUSSION


Easement Rights

 In points of error one and two, the Adamses contend that they were granted an
implied easement to use the Improved Ranch Road to access the south portion of their property
as well as the north. In the alternative, they argue that the language of the original written
easement signed by the Hunnicutts expressly provides for more than one right of ingress and
egress to their property off the Improved Ranch Road.

 An easement by "implied grant" is created when the dominant estate is conveyed
by the grantor. Daniel v. Fox, 917 S.W.2d 106, 110 (Tex. App.--San Antonio 1996, writ denied)
(citing George v. Phillips, 642 S.W.2d 275, 277 (Tex. App.--Texarkana 1982, no writ)). In this
case, the dominant estate (the Adams property) was conveyed by the Hunnicutts to the Adamses
in 1941. The situation of the parties at the time of the conveyance constitutes the operative facts
to support a claim of a grant by implication. See id. at 111; see also Hoak v. Ferguson, 255
S.W.2d 258, 260 (Tex. Civ. App.--Fort Worth 1953, writ ref'd n.r.e.).

 However, an express written easement exists in this case. Although there was a 
two-month gap between the sale of the property to the Adamses and the execution of the written
easement, the parties do not dispute that at the time the easement was created, its language
accurately reflected the intention of the parties to the transaction-- the Adamses and, as
predecessors in title to appellee, the Hunnicutts. We do not find the short span of time between
the Hunnicutts' execution of the deed and the written easement agreement to be significant. 
Moreover, although the deed and the express easement agreement were signed two months apart,
they were filed and recorded on the same day. Therefore, we hold both instruments to be part
of but one transaction and their respective executions were for all practical purposes simultaneous. 

 When an express easement exists there can be "no implied easement incidental to
the grant of the express easement except that which is reasonably necessary to the fair enjoyment
of the express easement." Coleman v. Forister, 514 S.W.2d 899, 903 (Tex. 1974). 
Accordingly, we must first look to the plain language of the written easement agreement to
determine the rights of ingress and egress expressly granted the Adamses before we can determine
whether the Adamses have met the requirements for an easement by "implied grant." See id.; see
also Capitol Rod & Gun Club v. Lower Colorado River Auth., 622 S.W.2d 887, 893-94 (Tex.
App.--Austin 1981, writ ref'd n.r.e.); Wall v. Lower Colorado River Auth., 536 S.W.2d 688, 691
(Tex. Civ. App.--Austin 1976, writ ref'd n.r.e.). 

 "The scope of an express easement is determined by the same rules which are
applicable to deeds and other written instruments." Wall, 536 S.W.2d at 691 (citing Armstrong
v. Skelly Oil Co., 81 S.W.2d 735 (Tex. Civ. App.--Amarillo 1935, writ ref'd)). Unless cause
exists for going outside the language of the express easement or there is a finding that such
language is ambiguous, the Adamses must rely on that document alone. See Coleman, 514
S.W.2d at 903. In the case of an unambiguous writing, courts will give effect to the intention of
the parties as expressed by or as apparent from the writing. See Wall, 536 S.W.2d at 691. 

 In this case, neither party pleaded that the written easement is ambiguous. The
parties do acknowledge that it lacks definite terms and descriptive language, such as metes and
bounds describing the right of access to the Adams property, which make it difficult and
cumbersome to determine the rights expressly granted. However, "the fact that an easement
clause is vague, indefinite, or uncertain will not necessarily authorize the court to completely
ignore the valuable right thereby granted if the clause is susceptible of a reasonable construction
as to the true intent of the parties." Elliot v. Elliot, 597 S.W.2d 795, 802 (Tex. Civ.
App.--Corpus Christi 1980, no writ) (citing 21 Tex. Jur. 2d Easements § 13, pp. 132-33 (1961)). 
Furthermore, "[a]n express grant of a right-of-way set out in general terms without specifying the
exact place for its location can be made certain by the act of the grantee in selecting the
easement." Id. Once selected, the grantee's easement rights become fixed and certain. Id. (citing
Houston Pipe Line Co. v. Dwyer, 374 S.W.2d 662, 666 (Tex. 1964); 21 Tex. Jur. 2d Easements
§ 45, pp. 173-74 (1961)). 

 We agree with the reading of the express language of the easement as determined
by the trial court. The only right conferred upon the Adamses was by way of what the trial court
defined as the "Easement Road": over the Improved Ranch Road to the Adams Access Road and
along the Adams Access Road to the gate on the north end of the Adams property. The grant
expressly provides an "easement of passing in and along a certain way or road . . . across all of
said [Norsworthy] Ranch . . . along the route or routes that will render the land [of Adamses] .
. . most conveniently accessible to the Austin and Hamilton Pool road . . . together with free
ingress, egress and regress to and for . . . Adams . . . as shall be necessary or convenient at all
times and seasons forever." The Adamses contend that the easement language contemplates the
possibility that the Adamses may use multiple points along the Improved Ranch Road to access
their property. They argue that "route or routes" can be interpreted to allow the Adamses
multiple access routes off the Improved Ranch Road to their property. However, we find that a
reading of the easement's plain language also supports the trial court's holding an express grant
of only one means of accessing the Adams property--by way of a route along the Improved Ranch
Road to the Adams Access Road. 

 The express easement provides for the "most necessary and convenient" "route or
routes" to the Adams property from the Austin and Hamilton Pool Road. The record reveals that
the Easement Road is the most necessary and convenient access to the Austin and Hamilton Pool
Road. The record contains evidence that the Adamses chose this route as the way to access their
property. Lew Valentine Adams, the Adamses' son, testified that over the years his family used
several points of access off the Improved Ranch Road south of the Adams Access Road, but he
also testified that the family had used the Easement Road--along the Improved Ranch Road and
Adams Access Road to the northern gate on their property--for as long as he could recall. Further,
Marjorie Adams testified that the Easement Road was the original access route and the primary
route of travel to their property for over fifty years. Therefore, we conclude that the evidence
supports the trial court's conclusion that "[t]he Easement Road establishes the location and
dimensions of the easement conveyed to Mr. and Mrs. Adams in the Easement Document." We also agree with the trial court's conclusion that the facts of this case do not
justify the implication by law of greater or additional easement rights in favor of the Adamses. 
Even if the parties in this case had not expressly agreed to their easement rights, the Adamses
have failed to meet the requirements for an implied grant of an additional easement. To establish
the existence of an implied easement, a party must show that (1) there was unity of ownership of
the dominant and servient estates and that the use was (2) apparent, (3) in existence at the time
of the grant, (4) permanent, (5) continuous, and (6) reasonably necessary to the enjoyment of the
premises granted. Daniel, 917 S.W.2d at 100 (citing Bickler v. Bickler, 403 S.W.2d 354, 357
(Tex.1966); Drye v. Eagle Rock Ranch, Inc., 364 S.W.2d 196, 207 (Tex. 1963); Hoak, 255
S.W.2d at 260; Miles v. Bodenheim, 193 S.W. 693, 696 (Tex. Civ. App.--Texarkana 1917, writ
ref'd)). "In cases involving easements by implied grant, it is sufficient if the easement in question
was reasonably necessary to the convenient and comfortable enjoyment of the property as it
existed when the severance was made." Id. (citing Fender v. Schaded, 420 S.W.2d 468, 472
(Tex. Civ. App.--Tyler 1967, writ ref'd n.r.e.); Teich v. Haby, 408 S.W.2d 562, 566 (Tex. Civ.
App.--San Antonio 1966, writ ref'd n.r.e.); Barrick v. Gillette, 187 S.W.2d 683, 687 (Tex. Civ.
App.--Eastland 1945, writ ref'd w.o.m.); Scarborough v. Anderson Bros. Const. Co., 90 S.W.2d
305, 310 (Tex. Civ. App.--El Paso 1936, writ dism'd)). 

 Because the Adamses have been granted an access route along the Easement Road
pursuant to the express language of the written easement, they cannot show that an additional
easement route is "reasonably necessary to the convenient and comfortable enjoyment of the
property as it existed when the severance was made." The Adamses assert that they are unable
to travel by car to the southern boundary of their property from the Easement Road access on the
northern portion due to the condition of the land. However, they concede that they can travel by
foot and could build a road, but at great expense. "When one has access to a part of his tract of
land by way of travel over his own property, this, as a matter of law, is a better and more direct
route than one which burdens an adjacent landowner. . . . It does not matter that the route across
one's own land is longer, more circuitous, or in an inferior condition physically." Sentell v.
Williamson County, 801 S.W.2d 220, 223 (Tex. App.--Austin 1990, no writ). Only when there
is no way through his own land can a grantee claim a right over that of a grantor. Duff v.
Matthews, 311 S.W.2d 637, 640 (Tex. 1958). Thus, the trial court properly found that the
Adamses are able to obtain access across their own land from the terminus of the Easement Road
and are therefore not entitled to an additional grant by implication. (3) Points of error one and two
are overruled.


Easement Width

 In their third point of error, the Adamses contend that the trial court's finding that
their easement is fifty feet wide directly contradicts evidence introduced at trial tending to show
that the easement should be sixty feet wide--1983 and 1995 surveys describing the width of the
Improved Ranch Road as sixty feet. Review of the record reveals, however, evidence that not all
of the easement was surveyed to a sixty-foot width. The Easement Road follows the Improved
Ranch Road to the Adams Access Road. The surveys relied on by the Adamses only describe the
Improved Ranch Road, an asphalt road which is the main thoroughfare for travel across
Norsworthy Ranch. The asphalt on the Improved Ranch Road measures only twelve feet in width. 
The Adams Access Road is merely a dirt road which has not been improved by the Adamses for
at least twenty years. Considering the character of the Adams Access Road, it was reasonable for
the trial court to find that an easement of fifty feet in width would allow the Adamses sufficient
access to their property. Therefore, we find the evidence supports the trial court's finding that
the easement is fifty feet in width. Point of error three is overruled. 


Other Damages

 The Adamses argue in their final two points of error that the trial court erred in
failing to award damages for trespass for appellee's encroachment on their easement rights and
in failing to award attorneys' fees in connection with their request for declaratory relief. Having
concluded that the trial court properly determined that the written easement expressly granted a
single right of access to the Adams property by way of the Easement Road, and that the Adamses
are not entitled to an additional implied easement by grant, we find no error in the trial court's
conclusion that there was no trespass by appellee in its construction of the fence along the
boundary of the two properties and in the trial court's denial of the Adamses' request for
attorneys' fees. Points of error four and five are overruled.


CONCLUSION


 Having overruled all the Adamses' points of error, we affirm the judgment of the
trial court.



 


 Lee Yeakel, Chief Justice

Before Chief Justice Yeakel, Justices Aboussie and Jones

Affirmed

Filed: August 31, 1998

Publish
1. The Adamses do not pursue their prescriptive easement claim on appeal.
2. We will refer to the various roads adjacent to and across Norsworthy Ranch as they have
been designated and referred to by the parties.

3. The Adamses rely on Teich v. Haby, 408 S.W.2d 562 (Tex. Civ. App.--San Antonio 1966,
writ ref'd n.r.e.), and Daniel v. Fox, 917 S.W.2d 106 (Tex. App.--San Antonio 1996, writ
denied), for the proposition that "reasonable necessity" requires that they be granted access to the
southern portion of their property from an additional access point along the Improved Ranch Road
due to the impassable condition of their property. However, both cases can be distinguished from
this case. Neither case involved an express easement. Daniel involved an easement by necessity;
evidence indicated that the only way to cross the dominant estate was to cross a large creek. In
this case, the evidence supports the trial court's finding that the size, location, and physical
characteristics of the Adams property would allow them to obtain access across their own land
from the terminus of the Easement Road. Teich involved the purchase of a servient estate with
an existing implied easement by grant. The court recognized the easement because it was the
primary access route to the dominant estate and the only road that ran all the way through the
dominant estate. In this case, the primary access route is the Easement Road, and the southern
access the Adamses seek does not run through their property. 



nt-family: CG Times Regular">Easement Width

 In their third point of error, the Adamses contend that the trial court's finding that
their easement is fifty feet wide directly contradicts evidence introduced at trial tending to show
that the easement should be sixty feet wide--1983 and 1995 surveys describing the width of the
Improved Ranch Road as sixty feet. Review of the record reveals, however, evidence that not all
of the easement was surveyed to a sixty-foot width. The Easement Road follows the Improved
Ranch Road to the Adams Access Road. The surveys relied on by the Adamses only describe the
Improved Ranch Road, an asphalt road which is the main thoroughfare for travel across
Norsworthy Ranch. The asphalt on the Improved Ranch Road measures only twelve feet in width. 
The Adams Access Road is merely a dirt road which has not been improved by the Adamses for
at least twenty years. Considering the character of the Adams Access Road, it was reasonable for
the trial court to find that an easement of fifty feet in width would allow the Adamses sufficient
access to their property. Therefore, we find the evidence supports the trial court's finding that
the easement is fifty feet in width. Point of error three is overruled. 


Other Damages

 The Adamses argue in their final two points of error that the trial court erred in
failing to award damages for trespass for appellee's encroachment on their easement rights and
in failing to award attorneys' fees in connection with their request for declaratory relief. Having
concluded that the trial court properly determined that the written easement expressly granted a
single right of access to the Adams property by way of the Easement Road, and that the Adamses
are not entitled to an additional implied easement by grant, we find no error in the trial court's
conclusion that there was no trespass by appellee in its construction of the fence along the
boundary of the two properties and in the trial court's denial of the Adamses' request for
attorneys' fees. Points of error four and five are overruled.


CONCLUSION